Gill v. Baltimore & Ohio Railroad Co.

Headnote 1: Municipal Corporations, 28 Cyc. 463 (1926 Anno), and Prohibition, 32 Cyc. 602, 737 (1926 Anno).

---

ANNA W. GILL, Administratrix of Estate of GLENN C. GILL, v. BALTIMORE & OHIO RAILROAD COMPANY, Appellant.

In Banc, February 11, 1924.

1. **NEGLIGENCE: Employers' Liability Act: Federal Rule: Weight of Evidence.** A supposed Federal rule that a trial court, in the jurisdiction where the accident occurred, may direct a verdict in accordance with the weight of the evidence in an action for personal injuries brought under the Federal Employers' Liability Act, and that a verdict will be set aside in an appellate Federal court on a record it may think shows such verdict to be against the weight of the evidence, has no application in this case, because: (a) the weight of the evidence was with respondent; (b) the overruling of the appellant's motion for a new trial necessarily implied that the trial court found the weight of evidence to be with respondent, and its ruling solved the doubt, even if there were such a Federal rule; (c) the Conformity Act of June 1, 1872 (U. S. Rev. Stat. sec. 914, c. 255, p. 197), excludes the application of the rule in this case, even if it existed in such other jurisdiction; and (d) no such rule exists.

2. ———: **Presumption of Due Care.** Presumption or inference of due care on the part of one killed by cars, though applicable in a particular case, merely rebuts a charge of contributory negligence, and does not tend to prove negligence on the part of defendant; but in this case, plaintiff did not rely upon such presumption or inference to make out her case, but by ample evidence proved that defendant was actually negligent.

3. ——: **More Than One Cause for Injury: Conflict: Rule Inapplicable.** The conflict of evidence was on the question whether the deceased foreman of the switching crew did or did not give or originate a signal for the movement of the cars which killed him, and appellant contends that the evidence tends to show more than one cause for his injury and death, for one or more of which it was not liable, and that there was no substantial evidence that a cause for which it would be liable produced his death. *Held,* that the rule is not involved in this case, for here the allegations were that he was lawfully behind the cars for a purpose necessary for the performance of his work, that the authority to direct the engineer to move the cars resided in him and in no other, that the engineer started the train without any signal given or authorized by him, and that such movement caused the cars to kill him, and ample evidence supports these allegations.

4. ——: **Evidence: Impeachment: Written Statements.** Written statements, previously made by the engineer and brakeman of the train which killed the foreman of the switching crew, contradictory of their testimony at the trial that some one signaled the engineer to move the cars, may be used, not for the purpose of proving defendant's negligence in moving the cars without a signal from the foreman, but for the purpose of impeachment.

5. ——: **Instruction: Interstate Commerce.** An instruction for plaintiff in an action founded on the Federal Employers' Liability Act, which required the jury to find, in substance, before verdict for plaintiff, that defendant was a common carrier by railroad; that at the time of the injury to the plaintiff's husband he was in its employ as the foreman of a switching crew and acting as such; that he and his crew, as such, were engaged in switching cars in whole or in part loaded with shipments "originating in one state and destined to and en route to another and different state of the United States," and that in doing the work he was killed, etc., properly submitted the question whether the foreman and appellant were engaged in interstate commerce at the time he was killed by said cars, and the contention that "the cars may have been switched for the sole purpose of making up a train for handling only intra-state commerce" is untenable.

6. ——: ——: **Damages: Life Expectancy of Deceased.** In a suit by the administratrix of the foreman of a switching crew engaged in interstate commerce, who was younger than his wife, an instruction explicitly confining the jury to "only the pecuniary loss sustained, if any, by his widow" by reason of the foreman's death, and telling them to base her "loss, if any," on the "present cash value of the support, if any, lost by her," and that they

might take into consideration the foreman's age and probable expectancy, did not interfere with the rule that, if the ages of the foreman and his wife differed, that which was shortest is the basis of proper recovery, for it confined the loss to the probable value of the support the widow had lost.

7. ———: ———: ———: **The Word ''Support.''** Where the instruction explicitly limited recovery to "only pecuniary loss sustained, if any, by his widow," the use of the word "support" in a subsequent clause telling the jury to base her "loss, if any," on the "present cash value of the support, if any, lost by her" could not have misled the jury to understand that "support" included unallowable compensation.

8. ———: ———: **Greater Weight of Evidence: Contributory Negligence.** Where one of the issues submitted to the jury is contributory negligence, the defendant is not entitled to an instruction telling the jury "that if, from a consideration of all the evidence, you are unable to determine whether the greater weight of the evidence is in favor of plaintiff or in favor of defendant, then the plaintiff has not proved her case, and you should find your verdict in favor of defendant." As asked the instruction placed the burden on plaintiff on all issues, including contributory negligence, and the court would have been justified in refusing it outright, and did not err in so modifying it as to make it accurately declare the law and giving it as modified.

9. ———: **Damages: American Experience Tables.** The American Experience Tables, as corrected in 1905, Laws 1905, p. 140, are based upon lives without selection, and is the table which has received the general approval of courts. The Northampton and Farr are not much used except upon the compulsion of statutes.

10. ———: **Excessive Verdict: Life of Husband: Present Cash Value: $22,333.33.** In this case, based upon the Federal Employers' Liability Act, in which deceased was in good health and earning as a switchman $1800 a year at the time of his death at the age of twenty-four years, and the instruction limited the recovery to the "pecuniary loss" sustained by his widow, who was thirty-two years of age and whose life expectancy was 33.92 years at the time of his death, it is shown that the present worth of 34 annual installments of $1100 each, at 4 per cent interest, is $22,377.19, and that he turned over to her much more than $1100 per year, and it is therefore *held* that a verdict fixing the present cash value of the widow's loss due to his death at $22,333.33 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Miller,* Judge.

AFFIRMED.

*Fordyce, Holliday & White,* and *Kramer, Kramer & Campbell* for appellant; *Morrison R. Waite* and *William A. Eggers* of counsel.

(1) In proceedings brought under the Federal Employers' Liability Act the rights and obligations depend upon that act and the applicable principles of common law as interpreted and applied in the Federal courts. New Orleans & N. E. Railroad Co. v. Harris, 247 U. S. 367, 371; Southern Railway Company v. Gray, 241 U. S. 333, 339. (2) The Federal Employers' Liability Act should be construed in the light of the decisions of the Federal courts. Central Vermont Ry. Co. v. White, 238 U. S. 507, 512. (3) The negligence of a defendant cannot be inferred from a presumption of care on the part of a person killed. A presumption in the performance of a duty attends the defendant as well as the person killed; it must be overcome by direct evidence, one presumption cannot be built upon another. Looney v. Metropolitan Railroad Co., 200 U. S. 480, 488; Yarnell v. Ry. Co., 113 Mo. 570, 579. (4) The rule is in cases of this character that if the accident might have resulted from more than one cause, for one of which the master is liable and for the other he is not liable, it is necessary for the plaintiff to prove, in the first instance, that the injury arose from the cause for which the master is liable. The court or jury cannot speculate or guess from which cause the accident happened. Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300, 307; Giles v. Mo. Pac. Ry. Co., 169 Mo. App. 24, 34; Fink v. K. C. Southern Ry. Co., 161 Mo. App. 314, 325; Patton v. Tex. & Pac. Ry. Co., 179 U. S. 658, 663; St. Louis, Iron Mountain & Southern Ry. Co. v. McWhirter, 229 U. S. 265, 282; New Or-

leans & N. E. Railroad Co. v. Harris, 247 U. S. 367, 371.
(5)   When the plaintiff alleges specific acts of negligence on the defendant's part, his evidence and his right
of recovery will be limited to the specific acts charged.
Chitty v. Iron Mountain & Southern Ry. Co., 148 Mo.
64, 75; Evans v. Wabash Railroad Co., 222 Mo. 435,
453; McGrath v. Transit Co., 197 Mo. 97, 105; Roscoe v.
Met. Street Ry. Co., 202 Mo. 576, 587.  (6)  If in
the trial of civil cases it is clear that the state of the evidence is such as not to warrant a verdict for a party, and
that if such a verdict were rendered the other party
would be entitled to a new trial, it is the right and duty
of the judge to direct the jury to find according to the
views of the court.   Barrett v. Virginian Ry. Co., 250
U. S. 473, 476.   (7)   An instruction must be based upon
the evidence; it cannot be broader than the facts proven.
State ex rel. v. Ellison, 270 Mo. 645, 653; Dalton v. Ry.
Co., 187 Mo. App. 691, 697; Hearon v. Lbr. Co., 224 S.
W. 67, 69.   (8)   The expectancy of the plaintiff was
less than that of the deceased. It, therefore, was vital
to a just verdict that the damages be based upon the
expectancy of the plaintiff instead of upon that of the
deceased.   McCord v. Schaff, 279 Mo. 558, 566; McIntyre
v. Ry. Co., 286 Mo. 234, 259.   (9)   The damages assessed
in this case are excessive.   Burtch v. Wabash Ry. Co.,
236 S. W. 338, 347; Crecelius v. Ry. Co., 284 Mo. 26, 43.
(10)   The Federal decisions must be looked to, to determine whether enough facts have been introduced for the
jury to infer negligence, as that question involves matters of substantive law and not procedure.  1 Roberts'
Federal Liability of Carriers, p. 950; Illinois Central
Railroad Co. v. Johnston, 87 So. (Ala.) 866; Southern
Railroad Co. v. Prescott, 240 U. S. 632.   (11)   The
burden of proof that the deceased was engaged at the
time in question in interstate commerce is upon the plaintiff.   Southern Ry. Co. v. Lloyd, 239 U. S. 496, 501.
(12)   In order that the Federal Employers' Liability
Act may apply, the work of the employee must consti-

302 Mo. Sup.—21.

tute a real or substantial part of the interstate commerce in which the carried is engaged, or be so clearly related to it as to be practically a part of it. Illinois Central Railroad Co. v. Behrens, 233 U. S. 473; Erie Railroad Co. v. Welch, 242 U. S. 303; L. & N. Railroad Co. v. Parker, 242 U. S. 13. (13) Contradictory statements of witnesses can have no legal tendency to establish the truth of such matter. Southern Ry. Co. v. Gray, 241 U. S. 333, 337; Donaldson v. Railroad, 188 Mass. 484, 486; McDonald v. Railroad, 186 Mass. 474; Commonwealth v. Starkweather, 10 Cush. 59; Purdy v. People, 140 Ill. 46. (14) The damages should be limited to compensation for the deprivation of the reasonable expectation of the pecuniary benefits that would have resulted from the continued life of the deceased. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485.

*Sidney Thorne Able* and *Charles P. Noell* for respondent.

(1) The trial court did not err in refusing to direct a verdict for the defendant. (a) Under the practice in Missouri a trial court may not direct a verdict merely because the weight of the evidence was such that a verdict contrary thereto ought not in his opinion to stand, but he may, under our practice acts, grant one new trial on such ground, but in the case at bar the weight of the believable testimony was with the plaintiff and the trial court refused to grant defendant a new trial. Roscoe v. Met. St. Ry., 202 Mo. 576; R. S. 1919, secs. 1424, 1454; Southern Ry. Co. v. Lloyd, 239 U. S. 496; Overstreet v. N. & W. R. Co., 238 Fed. 565. (b) All matters of practice in a case under the Employer's Liability Act being tried in a state court are governed by the practice in such state courts. 2 Roberts' Federal Employer's Liability, p. 1238; C. & O. Railroad v. Kelly's Admr., 161 Ky. 655, 241 U. S. 485; Gibson v. Railway, 213 Fed. 488. (c) Plaintiff does not have to conclusively prove her case by excluding all possibilities inconsistent with lia-

bility. Buesching v. Gas Light Co., 73 Mo. 219, 230. (d) If the plaintiff assumed an unnecessary burden in her pleading, proof and instruction, it is not binding upon her upon appeal, as she is not the appellant or complaining party, and all that is necessary is that enough was alleged, proven and required to be found by the jury to entitle her under the law to recover. Callicotte v. Railway, 274 Mo. 689; Moore v. Railroad Co., 268 Mo. 31. (e) The engineer of a switch engine, who backs a train without having received any signal to do so, whereby another servant is injured, is guilty of negligence. Black v. Mo. Pac. Ry. Co., 172 Mo. 177, 190. (2) A carrier whose lines lie wholly within a state is engaged in interstate commerce when handling one or more cars loaded with merchandise enroute from one state to another state, and an employee switching cars among which there are one or more such cars loaded with interstate shipments is within the protection of the Federal Employer's Liability Act. 1 Roberts' Federal Liability of Carriers, sec. 432, p. 742; Richey on Federal Employer's Liability (2 Ed.) secs. 34-35, p. 63. (a) An instruction which requires the "jury to find that the deceased was in the employ of the defendant as a member of one of its crews and that one or more of the cars in the train of cars contained one or more shipments originating in one state and destined to another state, and that the defendant was at such times a common carrier by railroad and that the crew were engaged in switching this train of cars" is all that was necessary in fact under the evidence in this case. The court would have been warranted in instructing the jury as a matter of law that deceased was at the time employed in the interstate commerce work of the defendant. Payne v. Bearden, 266 Fed. 879; Bolch v. Ry. Co., 90 Wash. 47, 155 Pac. 422, 242 U. S. 616; Erie Railroad Co. v. Downs, 250 Fed. 415; Delk v. Railroad Co., 220 U. S. 580, 55 L. Ed. 590; Chicago, Milwaukee & St. Paul Ry. Co. v. Voelkerk, 129 Fed. 522; Erie Railroad Co. v. Winfield,

244 U. S. 170; Vandalia Railroad Co. v. Holland, 183 Ind. 438, 443; Snyder v. Great Northern Ry. Co., 88 Wash. 49, 152 Pac. 703; Hester v. Railroad, 254 Fed. 788; Wagner v. Ry. Co., 277 Ill. 114. (3) Life insurance tables are not binding on the jury in deciding the probable duration of life of a particular individual. C. & O. Railroad v. Kelly, 241 U. S. 485. (4) An instruction which tells the jury that the widow can only recover "the pecuniary loss sustained" by reason of "her husband's death," "by his widow" "and in determining such loss the jury should base its findings on the present cash value of the support lost to her by reason of his death," clearly requires the jury to find every necessary element. C. & O. Railroad v. Kelly, 241 U. S. 485; Crecelius v. Railway, 284 Mo. 26, L. & N. Railroad v. Holloway, 246 U. S. 525. There would have been no harm done and no reversible error, if the plaintiff's instruction had told the jury to base the damages on the expectancy of Gill (it required them to base same on the present cash value of the loss to her), for according to life insurance standards the expectancy of Gill, twenty-four years of age employed in operation of railroad and his wife thirty-two years of age (thirty-three at time of trial a year later) were both the same. R. S. 1919, secs. 1276, 1513; Jones v. Railroad Co., 78 So. 568, 241 U. S. 181; McIntyre v. Frisco Ry. Co., 286 Mo. 234. (5) The trial court did not err in refusing the instruction in the form requested by defendant which put the burden of proof on the issue of deceased's contributory negligence on the plaintiff. Central Vermont Ry. Co. v. White, 238 U. S. 507, 59 L. Ed. 1433; Roscoe v. Met. St. Ry., 202 Mo. 576. The instruction as modified stated the law correctly. (6) "The question of the proper measure of damages is inseparably connected with the right of action and in cases arising under the Federal Employer's Liability Act it must be settled according to the general principles of law as administered in the Federal courts." C. & O. Railroad Co. v. Kelly, 241 U. S.

485; Norfolk Railroad Co. v. Ferebee, 238 U. S. 269, 59 L. Ed. 1303; Central Vt. Ry. Co. v. White, 238 U. S. 507, 59 L. Ed. 1433. It was intended that the Federal Employer's Liability Act should be uniformly applied, both as to liability under it and the measure of damages, all over the United States, and in order to do this the state courts all over the country follow the standards set by the Federal courts, which is that where there is evidence from which the jury and trial court could have reached the conclusion they did reach then appellate courts will not disturb the verdict. C. & O. Railroad v. Kelly, 241 U. S. 485.

JAMES T. BLAIR, J.—This is an appeal from a judgment upon a verdict for $22,333.33 in an action respondent, as administratrix, brought under the Federal Employers' Liability Act for damages for the death of Glenn C. Gill, a switch foreman, who was killed while at work for appellant in its yards in or near East St. Louis, Illinois.

On the night of December 28, 1920, the switching crew of which Gill was in charge was at work in the yards, placing loaded cars on track fourteen and empty cars on track fifteen, doors opposite each other, in order that car-load lots might be placed in the empty cars by transfer from the loaded cars, each of which contained freight for different destinations in other states. There is ample evidence that the movements were in interstate commerce. The switch engine was handling a cut of fourteen cars, some empty and some loaded. During the work an empty car was kicked in upon track fifteen, and the engine drew the remaining cars eastward out upon the lead. The rear car stopped at a point about ten feet east of the switch which opened into track fifteen. The next movement intended to be made was to place the loaded rear car of the cut on track fourteen. Gill stepped to the switch opening from the lead into track fifteen for the purpose of closing it. In the meantime Dorst, the long-field man, or rear brakeman, discovered that the car

kicked into track fifteen had stopped before clearing, i. e. before it moved far enough so that a car moving along track fourteen would pass it. Dorst gave a track signal, the purpose and effect of which was simply to inform Gill, the foreman, that the car mentioned had not cleared. The fact that it had not done so made it necessary to push this car farther in upon track fifteen, so that the next car could be set in upon fourteen. Gill then left the switch into fifteen aligned for that track and stepped over to the rear of the end car of the cut still attached to the engine, in order, as was the custom and practice, to close the knuckle of the coupler. This had to be done by hand. The purpose of doing it was to prevent the rear car of the cut from coupling into the car on track fifteen by impact—which would have required that some one should follow this car down the track, when it had been pushed far enough, and uncouple, so that the other cars could be drawn out upon the lead, and the car upon fifteen left upon that track. While Gill was closing the knuckle, the engineer started the engine, and Gill was run over and so injured that he died a few days later. There is evidence that it was Gill's business, as foreman, to give all signals for the movement of cars and engine, and that the engineer was not authorized to move without a signal originated by him. Sometimes a brakeman relayed a signal from Gill to the engineer when the foreman was so placed that he could not be seen by the engineer. There is ample evidence, both direct and circumstantial, that Gill neither gave nor originated a signal for the movement made. There is direct testimony that no signal for the engineer to come forward (his engine was coupled into the east end of the cut so that it faced the cars) was given by anyone. Carter and Fisher, the head brakeman and the engineer, attempted to testify that someone signaled, but each was confronted by his written statement so contradicting him that it is not surprising the jury found as it did. Gill was dragged ten or fifteen feet before a stop was made, after the emergency signal was given by Dorst who heard Gill cry out. A more detailed

statement of the evidence is not essential. The instructions will be set out so far as necessary in connection with a consideration of the objections made to them. The facts supposed to bear upon the question concerning the amount of the judgment appear in conjunction with what is said with reference to the point made respecting that matter.

I.   It is argued, it seems, that there is a Federal rule to the effect that a trial court may, in that juris-

**Federal Rule.** diction, direct a verdict in accordance with the weight of the evidence and that a verdict will be set aside in an appellate Federal court on a record it may think shows such verdict to be against the weight of the evidence; that this rule applies in this court in this case under the Employers' Liability Act; and that this court should reverse the judgment on its inspection of the record because of the failure of the trial court to direct a verdict for appellant on the weight of the evidence. There is more than one answer. (1) On the record presented here it is apparent that the weight of the evidence was with respondent. (2) If doubt on this head could be said to exist, the trial court's action in overruling the motion for new trial, necessarily implied that it found the weight of the evidence was with respondent. Otherwise, it was his duty to sustain the motion. That ruling of the court on that question would solve the question in a doubtful case even if there were such a rule in the Federal appellate courts, as is contended, and, if, further, it could be held to apply to this case. (3) The Conformity Act (Act of June 1, 1872, Rev. Stat., sec. 914, c. 255, sec. 5, v. 17, p. 197; Barrett v. Virginian Ry. Co., 250 U. S. 1. c. 475, et seq.) would exclude the application of such a rule in this case, even if it existed in the other jurisdiction. (4) No such rule exists. [Crumpton v. United States, 138 U. S. 361; Zeller v. Eckert, 4 How. 1. c. 298; York & Cumberland Ry. Co. v. Myers, 18 How. 246; City v. Babcock, 3 Wall. 240; Humes v. United States, 170 U. S. 210; Hyde v. Stone, 20 How. 170.] We venture to hold

that further pursuit of this subject is unnecessary. The rule stated in Buesching v. Gas Co., 73 Mo. 219, so often cited and applied by this court, is the standard by which the sufficiency of the evidence in this case is to be measured.

II. It is true, as contended, that negligence must be proved. The facts stated show there was ample evidence of it, and the jury's verdict shows that they were con-

**Presumption of Due Care.** vinced of the truth of that evidence. The ruling on the motion for new trial shows the view the trial court took of its weight. It is quite true that the presumption or inference of due care on the part of one killed by cars, though applicable in a particular case, merely rebuts a charge of contributory negligence and does not tend to prove negligence on the part of the defendant. [Yarnell v. Railroad, 113 Mo. 570.] Respondent does not rely upon such an inference or presumption to make out her case.

III. It is argued that the evidence tended to show more than one cause for the injury of Gill and his death, for one or more of which appellant was not liable, and that there was no substantial evidence tending to show

**More Than One Cause.** that a cause for which it would be liable, rather than another, produced the fatal result. [Goransson v. Riter-Conley Mfg. Co., 186 Mo. l. c. 307.] This rule is not involved. The conflict of evidence, so far as it can affect this insistence, was upon the question whether Gill did or did not give or originate a signal for the movement which killed him. The allegations in the petition to the effect that Gill was lawfully behind the cars for a purpose necessary to his work, *or any other* purpose; that the authority to direct the engineer to move the cars resided in him and in no other; and that the engineer started the train without any such direction or signal given or authorized by Gill, were sufficient so far as the present and allied contentions are concerned. There was ample evidence in support of these allegations.

IV. It is quite true that the written statements made by Carter and Fisher, in which they had told a story contradicted by their testimony for appellant, did

Impeachment.

not constitute evidence of negligence on the part of appellant. The statements were offered and used and doubtless operated to impeach the two.

V. It is urged that errors were committed in giving and refusing instructions.

(1) It is argued that the question whether the appellant and Gill were engaged in interestate commerce at the time of the accident was not properly submitted. On this point the instruction required the jury to find,

Interstate Commerce.

in substance, before verdict for respondent, that appellant was a common carrier by railroad and that at the time of the injury Gill was in its employ as a switch foreman and acting as such, and he and his crew, as such, were engaged in switching cars in whole or in part loaded with shipments "originating in one State . . . and destined to and enroute to another and different State of the United States," and that in doing the work, etc. The argument is that the cars "may have been switched at the time in question for the sole and only purpose of making up a train for handling only intra-state commerce." No decisions are cited by appellant upon the particular point. Besides the fact that in a somewhat similar situation it has been held that the trial court ought to have directed a verdict on the point (Payne v. Bearden, 266 Fed. 879, Eighth Circuit), the identical question was decided contrary to appellant's contention in Bolch v. Railway, 90 Wash. 47, and the writ of error dismissed by the Supreme Court of the United States, 242 U. S. 616. The decision in Delk v. Railroad, 220. U. S. 580, is a ruling which, in principle, supports respondent on this question. In addition, the instruction itself fairly answers appellant, and meets, substantially, the requirement upon which it insists.

(2)   Another criticism is based upon a question respecting the evidence which has already been considered. It is further contended the instruction authorized the jury to base its finding of damages on the expectancy of Gill, who was younger than his wife. The instruction explicitly confined the jury to "only the pecuniary loss sustained, if any, by reason of the death of Glenn C. Gill, by his widow, Anna W. Gill, . . ." It told the jury to base its finding as to her "loss, if any" on the "present cash value of the support, if any, lost to her." It also told the jury it might take into consideration Gill's age and probable expectancy. If the expectancies of Gill and his wife differed, that which was shortest was the basis of proper recovery. The instruction did not interfere with this rule. It authorized a finding solely for the loss to the wife and confined the loss to the probable value of the support she had lost. Gill's expectancy was an element. With respect to it, there was no misdirection. No evidence was offered as to the effect of Gill's hazardous occupation upon his expectancy. Neither did appellant ask an instruction upon the question it now raises.

*Life Expectancy.*

(3)   The use of the word "support" in the instruction is assailed. It is said respondent should have been restricted to "compensation for deprivations of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased." It is argued that the jury might have misunderstood the word "support." A previously quoted part of the instruction explicitly limited recovery to Anna W. Gill's "pecuniary loss." We do not think a jury could have been misled to think that "support" could include something for which the instruction plainly told them no compensation could be allowed.

*The Word "Support".*

(4)   Appellant asked an instruction which told the jury "that if, from a consideration of all the evidence in this case, you are unable to determine whether or not

the preponderance or greater weight of evidence is in favor of the plaintiff or in favor of the defendant in this case, that then the plaintiff has not proved her case, as the law requires, and you should find your verdict in favor of the defendant.''

*Greater Weight.*

The court refused this instruction in the form requested, but modified it and then gave it. The modification need not be set out, since it is not claimed the modified instruction is erroneous. It is argued that the instruction should have been given as above set out. One issue submitted to the jury was that of Gill's contributory negligence. It is obvious the instruction, as asked, was open to the construction that the burden was on respondent on all issues, including that of contributory negligence. The trial court would have been justified in refusing the instruction outright. In these circumstances the point must be ruled for respondent.

VI. The remaining contention is that the damages allowed are excessive. Gill was twenty-four years old at the time of his death. His wife, Anna W., was thirty-two. In Midway National Bank & T. Co. v. Davis, 288 Mo. 563, 233 S. W. l. c. 412, Court en Banc referred to the American Experience Tables, in arriving at expectancies at given ages. Attention was called to the fact that the extra hazards of employment as switchmen were to be considered in reduction of the expectancies shown by the table to which reference was made. It might have been added that the American Experience Tables are based upon *insured*, and therefore, *selected* and healthy lives, and naturally show greater expectancies than tables based upon lives taken without selection with respect to health. The General Assembly once overlooked this distinction (Laws 1903, p. 167) and promptly corrected the error at its next session. [Laws 1905, p. 140.] It made the excessive values under the American Experience Tables the basis of an emergency clause to the amendatory act. In that act the Carlisle table was adopted. It is based upon lives con-

*Excessive Verdict.*

sidered without selection and is the table which has received the general approval of courts. The Northampton and Farr tables, of like kind, are not much used except under compulsion of a statute. [Giauque & McClure on Annuities, p. 185 et seq.] In this case evidence was offered to show that Gill was in .good health, and none was offered to the contrary. This evidence justified a finding by the jury in accordance with it and entitles respondent to have his expectancy considered as that of a healthy man, and makes the American Experience Tables applicable. Under these tables his expectancy was 39.49, and that of his wife, whom the jury saw as a witness, 33.92. Whether her appearance of health and strength justified a finding that her duration of life was likely to exceed the average of healthy persons was a question the jury could determine from their view of her, and a finding we are in no position to review. The single submitted ground of recovery was the "pecuniary loss" to Anna W. Gill. Her expectancy, if a healthy woman, as the jury might have found, as against any contention which can be made now, equaled, or even exceeded, 33.92 years at the time of her husband's death. The widow is entitled to be reimbursed for her pecuniary loss. It is generally held in State courts that "where future payments are to be anticipated and capitalized in a verdict, the plaintiff is entitled to no more than their present worth." [Ches. & Ohio Ry. v. Kelly, 241 U. S. 1. c. 493, and cases cited.] The interest to accrue upon the damages allowed must be considered. The rate ought to be such that the principal will be safe in an investment such that financial experience is not essential to its making. [Same case, 1. c. 490.] In that case the court suggests that local conditions are to be considered and that "savings banks and other established financial institutions are in many cases accessible for the deposit of moderate sums at interest, without substantial danger of loss; the sale of annuities is not unknown; and for larger sums, state and municipal

bonds and other securities of almost equal standing are
commonly available." The net result of which implies
(as the court elsewhere states) that a somewhat low rate
of interest is to be employed in computing the capitalized
value of future installment payments. No annuity or
present worth tables were put in evidence. Neither, if
they had been would they have constituted an "absolute
guide of the judgment and conscience of the jury."
[Ches. & Ohio Ry. v. Kelly, supra.] The present worth
of thirty-four annual installments each equal in amount
to the annual money loss to Anna W. Gill on account of
her husband's death will show the probable loss under
like conditions to a healthy person, of the same age, of
average strength and average prospects of longevity.
During the first six months of the year preceding his
death Gill earned nearly or quite $200 per month. Dur-
ing the last six months of that year he worked about
half the time. Work had become somewhat slack. This
gave a total income for the year of nearly $1800. Wages
were higher than formerly, though we are not apprised
by the record that the decrease anticipated in Midwest
National B. & T. Co. v. Davis, supra, had become an ac-
tuality. To offset this, steadier work for Gill was to
be anticipated, both on account of the temporary charac-
ter of slack periods in railroad work and on account of
the reasonable probability of more continuous employ-
ment of Gill as foreman as his lengthening service and
increasing experience would secure it for him. It is not
unreasonable to think, in the circumstances, that his in-
come would have increased rather than diminished dur-
ing the succeeding years. The jury reasonably could
have so found. The record justifies the acceptance of
$1800, if not more, as the probable annual income. Seven
hundred dollars, per annum, is a reasonable allowance
for personal expenses of Gill and that part of the family
expense attributable to his membership in the family.
Much more than $1100 was turned over by him to his
wife. The present worth of thirty-four annual install-

ments of $1100, interest at four per cent, is $22,377.19; interest at five per cent, $21,086.78. [Wolfe's Inheritance Tax Calculations, pp. 84, 85.] Taxes, from which Gill's income was free, will reduce the net value of the judgment very materially. When these are figured at *one per cent*, the judgment does not cover the capitalization of annual installments amounting to as much as $900 each. The problem works out this way, even if the jury were bound by average expentancies and were not authorized to find that Anna W. Gill would live longer than the average healthy person of her age. The showing does not warrant a reduction of the verdict. This conclusion is amply sustained by numerous decisions, State and Federal, cited in the briefs, which will appear with the opinion.

The judgment is affirmed.

PER CURIAM:—This cause coming on In Banc on transfer from Division, the divisional opinion is adopted. *David E. Blair, Walker, White* and *Ragland, JJ.,* concur; *Woodson, C. J.,* concurs, except he thinks judgment should be reduced to $17,000; *Graves, J.,* dissents.

Headnote 1: Appeal and Error, 4 C. J. secs. 2834, 2840; Headnotes 2, 3, 5 and 8, Master and Servant, 26 Cyc. 1415, 1445, 1444, 1491, 1495; Headnote 4: Witnesses, 40 Cyc. 2742; Headnotes 6, 7 and 10: Death, 17 C. J. secs. 183, 235; Headnote 9: Evidence, 22 C. J. 1129.