.Fleeta A. DORSEY, Respondent,

v.

Rena B. MUILENBURG, Appellant.

No. 47999.

Supreme Court of Missouri,

Division No. 2.

April 10, 1961.

————◆————

Price Shoemaker, Elmer E. Reital, Fred E. Schoenlaub, St. Joseph, for appellant.

J. Dorr Ewing, Joe Beavers, Ewing & Beavers, Maryville, for respondent.

STOCKARD, Commissioner.

About noon on July 7, 1958, while Mrs. Rena B. Muilenburg, appellant, then 82 years of age, was backing her 1941 Chevrolet automobile on Highway No. 27 in Hopkins, Missouri, in order to make a left turn into an intersection she had just passed, she struck the left side of a Plymouth automobile being operated by William T. Dorsey, age 62. After two periods of hospitalization Mr. Dorsey died on November 13, 1958. His widow, respondent herein, brought this action for wrongful death and alleged that as the result of the negligence of appellant pre-existing diseases of her husband were aggravated by the injuries received resulting in his death. Appellant has appealed from a judgment in the amount of $8,000 entered pursuant to jury verdict. The notice of appeal was filed on December 9, 1959.

One of appellant's contentions is that the trial court erred in overruling her motion for a directed verdict. Therefore, we must set out the evidence, and because of the nature of the case the statement must be somewhat detailed.

Prior to the accident Mr. Dorsey "appeared" to be in good health, but he was bothered with what he called asthma and he coughed some. His wife thought it was a cigarette cough. Mr. Dorsey had worked at a filling station and had operated a tank wagon, but he quit that work in 1954 when he was requested to do "driveway work" because it was "just a little too hard work for him." He worked for Dale Owens during the summer of 1957 feeding livestock and driving a tractor. At the time of the accident and for several months prior thereto he had worked at a feed store. His duties consisted of carrying customers' cream and eggs, and loading and unloading sacks of feed and other merchandise. His work had been satisfactory, and he had not missed any time because of illness.

The accident resulted in but minor damage to the automobiles involved, and Mr. Dorsey suffered no cuts or other visible injuries. The highway patrolman who investigated the accident testified that Mr. Dorsey "made a brushing against his left arm and said 'it was a little sore.'" Mr. Dorsey's employer, Orris Fine, arrived at the scene of the accident about twenty minutes after its occurrence and according to him Mr. Dorsey "was leaning on the front of his car, [and] he had a hold of his arm." Mr. Dorsey later complained that his neck, back, arm and chest hurt him. Prior to the accident he regularly would go to a restaurant (owned by Mr. Dorsey and his wife and operated by her) with his wife of mornings before he went to his work, but after the accident he could not do so. He "had a very poor appetite" and he "lost interest in life, he just didn't seem to be the same, he couldn't do the things he had done at home." He also had three "blackout spells," and he developed trouble with his feet swelling. He had shortness of breath, his coughing increased and his color got very bad.

The morning following the accident and "several other times" Mr. Dorsey went to a chiropractor. This doctor did not testify. Mr. Dorsey returned to work at Fine's Feed Store the afternoon of the accident, but was not able to do his work, and his employer told him to "take the rest of the day off and he finally agreed to go." Either that afternoon or the following day Myrl Keith purchased some bailer twine at Fine's Feed Store, and Mr. Dorsey said: "Well, I

am going to ask you to carry this out for me. * * * I was in a wreck, my chest is sore and it hurts me." The following two weeks his employer carried him on the payroll but "he was off most of the time," and thereafter he was never able to do his work.

For about ten years Mr. Dorsey had had chronic bronchiectasis and emphysema, and he also had had myocardial degeneration for a shorter period of time. Dr. Clarence W. Kirk, his physician, had prescribed codeine for him to control coughing. Two or three weeks after the accident Mr. Dorsey went to Dr. Kirk "to see about whether he should continue to work at Fine's Store or not." He "was weak" and had "swelling of his feet and ankles." The doctor prescribed some medicine and advised him he should not be working. In September Mr. Dorsey was having trouble breathing and his feet were swollen. Dr. Kirk then gave him some diurel and some digitalis. On October 7 Dr. Kirk sent Mr. Dorsey to the hospital where he responded "pretty well for a time." On the hospital record the diagnosis was stated to be "Decompensated heart, arthritis cervical dorsal and lumbar" and also "generalized edema." He was released from the hospital on October 18, but was readmitted on November 1, 1958. He died on November 13, 1958. The cause of death on the death certificate was stated to be "Myocardial degeneration" with an interval between onset and death of six weeks. "Bronchiectasis & emphysema" with an onset ten years before death and "Arthritis Cervical and lumbar spine" for an unknown period were listed as constituting conditions "which gave rise to the above cause." "Other significant conditions contributing to death but not related to the terminal disease conditions" were stated to be "Injury in car wreck July 7, 1958."

Based upon his "treatment and acquaintance with Mr. Dorsey prior to the accident," and his "care and treatment following that day and up until the time of his death," and "assuming that Mr. Dorsey complained of an injury to his chest and arm following [the] accident," Dr. Kirk testified that it was his opinion "based upon a reasonable degree of medical certainty" that the accident would and did contribute to the death of Mr. Dorsey. He further stated that the fact that there may not have been any visible bruises to the tissues of the arm or chest would not change his opinion.

Dr. Frank Matteson, M.D., was engaged in general practice, but he never examined or treated Mr. Dorsey. He testified that it is not uncommon for one to have "a heart ailment" in connection with the bronchial trouble of emphysema and bronchiectasis, and that myocardial degeneration is a "part of the process of aging." Dr. Matteson examined the hospital records, and in answer to a hypothetical question in which he assumed the information revealed by those hospital records, the facts substantially as previously set out herein, and that Mr. Dorsey stated that he had struck the door of the car in the collision, he testified that it was his opinion "such an injury" could aggravate or influence the previously existing bronchial condition to the extent that it would precipitate or contribute to that condition so as to be a competent and producing cause of early heart failure and the death of Mr. Dorsey, and he further testified that it was his opinion that it did so in this case. He then explained and gave two reasons for his opinion. The first was that "any type of injury" to a person of the age of Mr. Dorsey would prevent him from his usual amount of exercise, whether it be in the form of work or otherwise, and that "very often contributes to a degenerative type disease when you limit the amount of activity or exercise of any individual that is in this age group." Secondly, "any injury to any particular part of the body can cause or aggravate degenerative types which is because circulation is probably already impaired to a certain extent, and you have further injury or aggravation of any of those conditions, it can tend to lead to a downhill course, such as a chest contusion can lead to difficulty with the lungs or heart, an injury to a limb can later end up with

the lessening of the use of that limb * * *." These reasons and explanations were further elaborated upon in his direct examination and in cross-examination.

Dr. Duane E. Mitchell, M.D., also answered substantially the same hypothetical question in the same manner, but he was not asked to and did not explain or give his reasons for his opinions.

Appellant's medical testimony was given by Dr. Lucien W. Ide, M.D. He stated that bronchiectasis is one of several diseases of the lungs and is the result of inflammation associated with irritation of the lining of the bronchial tubes; that it is a chronic infection which results in emphysema which is an overexpanded condition of the lungs that makes it difficult for the individual to expand and contract his lungs; and that a symptom which occurs with these diseases is coughing and shortness of breach. He further stated that "myocardial degeneration" is not an acceptable diagnosis in the present classifications by the American Heart Association because it is not specific enough, but that it "essentially means heart failure." Based on the "bits of evidence that were given in the record, and based upon a history of increasing shortness of breath," Dr. Ide suggested that Mr. Dorsey "was ill from heart failure or cardiac decompensation * * * as a result of a degenerative condition of the vessels in the heart muscle, that actually carries the blood supply to the heart muscle," that "when people have advanced bronchiectasis and emphysema * * * this contributes to an increased heart load, and increases the progress downhill of heart failure." He also stated that the hospital record presented "a rather common picture of an eventual death and two progressive and combined diseases." Dr. Ide testified that it was his opinion that "the accident that was described and conditions that * * * resulted in death had no relationship," and that "there was no aggravation or no production of those conditions by the described alleged injuries." Dr. Ide also stated that he could not see how the "blow" assumed to

have been received by Mr. Dorsey in the accident, without evidence of injury to protective structures such as the ribs, sternum and vertebral column, could result in "significant injury" to the heart and blood vessels or chest. He stated on cross-examination that bronchiectasis is not necessarily a disabling disease; that it depends on the individual and "sometimes people can be shown to have rather extensive bronchiectasis and still [be] able to carry on considerable work;" and that it "wouldn't be unlikely" that a person could have the disease for ten years and still be able to go ahead and do his ordinary work.

■ Appellant contends that the trial court should have directed a verdict in her favor, and her "principal complaint" is that there is not sufficient substantial evidence "to sustain her burden of proof as to the injuries received by William T. Dorsey * * * which aggravated pre-existing diseases that contributed to [his] death." In support of this, appellant asserts that the opinion testimony offered by respondent did not constitute substantial evidence and that the evidence failed to show that Mr. Dorsey received any injury "to his heart, lungs or chest that aggravated and made worse prior conditions" which caused or contributed to cause his death. Appellant does not challenge the right of respondent to recover in this action for wrongful death if Mr. Dorsey did receive injuries which of themselves would not normally have resulted in the death of a healthy person, but which aggravated existing diseases and thereby hastened or advanced, thereby causing or bringing about, the occurrence of death. See for example, MacDonald v. Metropolitan St. Ry. Co., 219 Mo. 468, 118 S.W. 78 (expressly disapproving Jackson v. St. Louis, Iron Mt. & Southern Ry. Co., 87 Mo. 422, 56 Am.Rep. 460); Strode v. St. Louis Transit Co., 197 Mo. 616, 95 S.W. 851; Fetter v. Fidelity & Casualty Co. of New York, 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am.St.Rep. 560; Herke v. St. Louis & S. F. Ry. Co., 141 Mo.App. 613, 125 S.W. 822; Shaffer v. Southern Bell

Telephone & Telegraph Co., 184 La. 158, 165 So. 651; McCahill v. New York Transportation Co., 201 N.Y. 221, 94 N.E. 616, 48 L.R.A.,N.S., 131; Larrissey v. Norwalk Truck Lines, 155 Ohio St. 207, 98 N.E.2d 419; Colla v. Mandella, 1 Wis.2d 594, 85 N.W.2d 345, 64 A.L.R.2d 95; 16 Am.Jur. Death § 78; 25 C.J.S. Death § 25.

We shall consider first appellant's various contentions concerning the opinion testimony of respondent's medical doctors. She challenges the hypothetical questions submitted to them because they "were based upon the statement of William T. Dorsey made at the scene of the accident which statement was improperly admitted as a res gestae statement." There is no further identification of "the statement" except that in the argument it is stated that it was made to Orris Fine. There is no separate point in the brief directed to the claimed erroneous admission of "the statement" into evidence. In the statement of facts in her brief, appellant states that "the following statement was admitted as a *res gestae* statement," and she then quotes the following testimony of Orris Fine: "Yes, that is the first thing I asked him, and he said he didn't think so. He said he could hardly tell. He was rubbing his arm and chest, said he hit the door pretty hard. He thought in two or three days he would be all right." We find from the record that appellant objected to the above quoted testimony and that the trial court sustained the objection and ordered the testimony stricken out. Later, after a discussion of the application of the *res gestae* rule, Mr. Fine testified that it was about twenty minutes after the collision that Mr. Dorsey made "this statement" which was, to use the language of respondent's counsel, the one Mr. Fine just related "about him complaining about his left arm and his chest." Mr. Fine then testified that Mr. Dorsey "was leaning on the front of his car, he had a hold of his arm, he had a hold like that (indicating)." The discussion between respondent's counsel and the trial court clearly indicates an erroneous view concerning

the application of the much abused *res gestae* rule to this situation, see Roush v. Alkire Truck Lines, Mo.Sup., 299 S.W.2d 518, but the testimony of Mr. Fine which was admitted and permitted to remain in evidence pertained only to what he personally saw; not to any hearsay statement as to what he heard or what was said to him. In the hypothetical question to Dr. Kirk there was not included an assumption that "Mr. Dorsey made any statement to Mr. Fine. There was an assumption that "Mr. Dorsey complained of an injury to his chest and arm following the accident," but there was other testimony to support this. In the hypothetical questions to Dr. Matteson and Dr. Mitchell there was improperly included an assumption that Mr. Dorsey stated that he had struck the door of the automobile, but appellant did not object to either hypothetical question for this reason. In this situation we do not find any prejudicial error against appellant for the assigned reason.

Recognizing that proper opinion testimony as to causal connection can constitute substantial evidence, appellant next asserts that the opinions of respondent's doctors were "so conflicting and unreasonable that no sound conclusion could properly be drawn from them, and that they were not sufficiently supported to constitute substantial evidence. She cites Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118; Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312; and Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644. We do not consider that the testimony of respondent's doctors is confusing or that it embodies any conflict within itself, and appellant points out none. She says that "even after reading and supposedly studying the hospital records and death certificate they [respondent's doctors] were reluctant to admit that Mr. Dorsey had any diseases that were serious." This does not demonstrate an inconsistency. As previously noted, appellant's doctor stated that, depending upon the individual, it is not unlikely that a person with rather extensive bronchiectasis can do his ordinary

work. Appellant's argument is directed primarily to the contention that respondent's doctors "set aside all honesty under the guise of expressing an opinion." Admittedly there is a conflict between Dr. Ide and respondent's doctors, but that does not necessarily mean that one side was dishonest. There could well be, and we think there was, an honest difference of opinion. Apparently the jury chose to believe respondent's doctors.

The question which has given us the most concern is whether the opinion testimony of respondent's doctors is sufficiently supported to constitute substantial evidence. Dr. Kirk was the examining and treating physician. He testified concerning the past medical history and the treatment following the accident. He then expressed his opinion, based on his personal knowledge of the conditions and treatment of Mr. Dorsey, that the accident could have and in fact did contribute to his death. In Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 565, generally accepted to be a leading and well reasoned case on the issue of whether opinion testimony constitutes substantial evidence, it was stated that even the opinion of a medical expert must have "to support it reasons and testimony which will give it sufficient probative force to be substantial evidence." But, it was also there stated that "the opinion of experts based upon examination and treatment is substantial evidence and its weight is for the jury." The testimony of that examination and treatment constitutes the reasons to support the opinion expressed, unless, of course, there is no relation whatever between the two. Here Dr. Kirk did testify concerning his opportunity to examine and treat Mr. Dorsey, and what his observations were and the treatment he gave. While his testimony could have been more explicit, particularly in the field of an explanation of the reasons for his opinion, we conclude that his opinion testimony that the accident could and in fact did contribute to cause and bring about the death of Mr. Dorsey constituted substantial evidence of causation.

■ Dr. Matteson did not base his opinion upon personal treatment and knowledge of the conditions and changes in conditions of Mr. Dorsey. Therefore, in order to have sufficient probative force to constitute substantial evidence, as distinguished from an unsupported conclusion, his opinions had to have supporting reasons in the testimony. Kimmie v. Terminal R. R. Ass'n of St. Louis, supra; Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118, 123. His opinion testimony qualified as substantial evidence in this respect. We have previously set out his testimony, and the reasons he gave as to why under the assumed facts he came to the conclusions he did. It is true that appellant disagrees with his opinion, and apparently thinks the reasons he advanced were unsound, but that was a matter for the jury after it heard respondent's testimony, including that of his expert witness as to why he thought the reasons advanced by Dr. Matteson were unsound. The opinion testimony of Dr. Mitchell did not have supporting reasons, but it was only cumulative of the ultimate conclusions reached by the other two doctors.

■ The opinion testimony of respondent was not "strong," and it was not of the nature to leave no doubt of its correctness. But, Dr. Kirk and Dr. Matteson were unquestionably qualified, and we as an appellate court cannot say as a matter of law that the opinions expressed by them were wholly without supporting "reasons and testimony" so as not to constitute substantial evidence.

■ Appellant also asserts that prejudicial error resulted in the admission in evidence of the answers of the doctors of respondent to the hypothetical questions asked them because the questions (1) did not describe any injuries that aggravated the pre-existing conditions; (2) "were not based upon facts or adequate data;" (3)

did not establish any direct or causal connection "in the way of injuries * * * which resulted in aggravating pre-existing diseases which contributed to the death;" (4) "were misleading and confusing to the jury;" and (5) called for answers based wholly upon conjecture, surmise and speculation. It is true that there was no direct testimony as to injuries which could be seen, such as cuts or bruises. But it was not fatal to respondent's case that there was not. An expert witness necessarily states his conclusions as to certain matters. In this case it was the effect of the collision on Mr. Dorsey and the cause of his death. We do not consider the expert opinions, which were based upon the hypothesized facts previously set out, to be the result of mere guess or conjecture, or that they failed to establish causal connection between the injuries, aggravation and death. Without a detailed analysis in an otherwise lengthy opinion of each of the contentions of appellant above set out, we conclude after careful study of the applicable rules stated in the cases cited, and in others, that it was not error for the trial court to permit the answers of the three doctors to the hypothetical questions. But as previously stated, the testimony of Dr. Mitchell alone did not constitute substantial evidence of causation.

■ We turn now to appellant's contention that the evidence, including the opinion testimony of Dr. Kirk and Dr. Matteson, failed to show any injury that aggravated and made worse existing conditions and caused the death of Mr. Dorsey. The jury could reasonably and properly find from the evidence that prior to the collision Mr. Dorsey had certain diseases, but that he was able to and did work and carry on the normal activity of a person of age 62 years; that in the collision he did receive some injury to his chest, back and arm, and that he complained of the injury and obtained treatment· therefor; that immediately after the collision he was not able to work and was not able to carry on his previous activities but started on a downward course which required medical treatment and which steadily progressed until it resulted in his death. In addition, by reason of the expert testimony of Dr. Kirk and Dr. Matteson, which constituted substantial evidence, the jury could find that the injuries received by Mr. Dorsey in the collision aggravated existing diseases and caused or brought about the death of Mr. Dorsey at a time earlier than it otherwise would have occurred. Respondent was entitled to the reasonable inferences from the evidence, and the evidence supported an inference that Mr. Dorsey sustained an injury which aggravated existing conditions and brought about his death.

The facts in this case are remarkably similar to those in MacDonald v. Metropolitan St. Ry. Co., 219 Mo. 468, 118 S.W. 78, 82. There the deceased, age 65, while appearing to be in good health but actually suffering from lumbago and perhaps with a heart disease, was caused by the sudden stopping of a streetcar to strike his head and body against the framework of a stove. He suffered no visible injuries which would normally cause death, but he complained of pains in his chest and his condition gradually and steadily became worse until he died over eight months after the accident. Judge Lamm had this to say: "The mere visible sign of his injury at the time was not great, but it would be dealing only with the surface of things to stop with that visible sign. The controlling fact in the case (deducible from its history) is that, traceable to that injury, he was never again a well man, and that, traceable to that same injury, after a rally at the start, he went steadily downhill to his grave. A blow such as he received was shown to be a probable cause of angina pectoris. As we see it, there is no link out in the chain of the evidence upon which the jury could rationally base their conclusion that the injury caused his death. Independent causes were suggested and conflicting theories were developed before the jury. It was for them to say which

theory was the most reasonable." We find no merit to the various contentions of appellant in support of her position that respondent failed to make a submissible case.

■ Appellant next contends that Mr. Dorsey was contributorily negligent as a matter of law. She relies solely on her own testimony that after the accident Mr. Dorsey said to her, "I saw you, I saw you go south, and when I took notice next you were in reverse," and that he also said, "I thought I could make it." The jury was not required to believe the testimony of appellant as to what she said Mr. Dorsey said to her. "[C]ontributory negligence as a matter of law can seldom be established by oral testimony offered solely on the part of the defendant. Usually it must appear in the plaintiff's case, or be established by testimony on the part of defendant which plaintiff concedes to be true, or by documentary evidence or proof of facts or circumstances by defendant which leave room for no other reasonable inference." State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967, 972. In the Thompson case it was conceded that there "may be cases" in which contributory negligence on the part of the plaintiff, or deceased in a death case, may be established by uncontradicted and unimpeached oral testimony offered by the defendant, but as there pointed out, an appellate court should be reluctant to so hold unless the proof is of "such character that it affords no room for reasonable controversy." See State ex rel. Bowdon v. Allen, 337 Mo. 260, 85 S.W.2d 63. The evidence in this case does not meet that test. Defendant relies only on Folluo v. Gray, Mo.App., 256 S.W.2d 273, where the plaintiff's testimony was held to establish contributory negligence on his part as a matter of law, and in which the factual situation was much different.

Appellant next asserts that the court erred in permitting respondent to introduce in evidence and read to the jury the statistical data from the American Experience Table of Mortality that a male person of age 62 has a life expectancy of 12.86 years. She says that Mr. Dorsey was suffering from diseases of a progressive nature and the table could in no way assist the jury in determining the damages sustained by respondent. Although the evidence pertaining to the life expectancy of Mr. Dorsey related only to the measure of damages, appellant does not challenge the amount of the verdict. We note also that Dr. Kirk, the treating physician, testified that it was his opinion that Mr. Dorsey would have lived out his normal span of life if the accident giving rise to this case had not occurred.

As early as 1896 this court recognized that mortality tables were admissible in evidence in a wrongful death case to show the life expectancy of the deceased. Boettger v. Scherpe & Koken Architectural Iron Co., 136 Mo. 531, 38 S.W. 298. The tables are also admissible to show the life expectancy of the one entitled to recover for the wrongful death. Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S.W. 831. The life expectancy of the respondent was not shown, and as stated in the Morton case, the measure of damages in a wrongful death case, insofar as affected by mortality tables, is based on the life expectancy of the deceased or of the plaintiff whichever is the least. However, appellant makes no complaint as to this, and if she thought the life expectancy of respondent should have been shown she could have offered it. It is true, as appellant contends, that in Gill v. Baltimore & O. R. Co., 302 Mo. 317, 259 S.W. 93, and in Trautloff v. Dannen Mills, Mo.App., 316 S.W.2d 866, there are statements that the person whose life expectancy was shown by a mortality table was in good health. We find no case, and appellant has cited none to us, in which the mortality table was excluded for the reason contended here. A comparable situation exists, however, when a person sues for permanent injuries, and he offers in evidence his life expectancy as shown by a recognized mortality table. In Moore v. Ready Mixed Concrete Company, Mo.Sup., 329 S.W.2d 14, 27, the

use of a mortality table to show life expectancy was approved over the objection of the defendant that "plaintiff's evidence showed that his life expectancy had been shortened by injuries received in the instant casualty." It was there stated: "It is generally recognized in this state and elsewhere that, 'In actions to recover damages for a permanent injury, resulting in the impairment or partial destruction of the earning capacity of the person injured, and in actions to recover damages for negligently causing death, mortality tables are customarily admitted to show the probable duration of the life of the injured plaintiff or the deceased as the case may be, which is an element in estimating damages.' 20 Am.Jur., Evidence, § 971, p. 821. And more specifically in point in the same volume it is said that 'it is generally not essential to the admissibility of mortality tables to show that the person whose expectancy of life is under consideration conforms to the standards of health and vigor adopted in compiling such tables. In most jurisdictions, standard mortality tables are admissible in evidence notwithstanding the person whose life expectancy is the subject of inquiry is in poor health, afflicted with disease, or addicted to dissipated habits. * * * As has been suggested, mortality tables are only guides or suggestions to the matters they set out, and cannot be rejected because of sharp variances in the hazards of life among various persons. Such matters are generally considered as going to the probative effect of the evidence, and not to its admissibility. The authorities are in general agreement that the probative value of the mortality tables may be weakened, and even, perhaps, in some cases, destroyed by evidence of ill-health or disease of the person whose life expectancy is in issue; such matters may properly be considered by the jury in weighing the testimony, but they do not render it incompetent.' " It was further noted in the Moore case that the jury should have understood its duty in considering the mortality table because at the request of the defendant the court gave a cautionary instruction concerning its use. No such instruction was requested by appellant in this case.

■ In Leggett v. Missouri State Life Insurance Company, Mo.Sup., 342 S.W.2d 833, at page 906, it was mentioned that in the life insurance industry the American Experience Table of Mortality is generally recognized as being out of date and not representative of current mortality experience. This is because it overstates the current rate of mortality; that is, it states the life expectancy at any given age at less than current experience. Appellant did not object on the ground that the table did not represent current experience, and the inaccuracy in the table was in her favor. In view of the ruling in the Moore case, the authorities there cited and the circumstances of the admission of the life expectancy of Mr. Dorsey as shown by the mortality table, we find no error prejudicial to appellant.

■ Appellant's challenge to respondent's verdict directing instruction is that while respondent pleaded an aggravation of pre-existing diseases which caused death and the evidence "disclosed a death caused by disease," the instruction permitted "a recovery for injuries that caused death." For the reasons previously stated we do not agree that the evidence showed no more than that the death was caused solely by disease. After hypothesizing the circumstances of the collision, respondent's Instruction No. 1 submitted that if the jury found that "*in consequence thereof deceased was injured and died * * * then* your verdict will be for the plaintiff * *." It is appellant's position that the italicized portion submitted more than the theory of aggravation of existing diseases which she pleaded and toward which her evidence was directed. Assuming this is true, it placed a greater burden on respondent than she was required to assume under the pleadings and evidence. However, we do not consider this to be the case, and we regard appellant's contention to be based upon a mere

play on words. Under the circumstances and in view of the evidence in this case the aggravation was the injury which caused the death. We see nothing confusing or misleading by the instruction referring to injuries which caused death. No reasonably intelligent jury could possibly have been confused or misled by the language used. But in any event, any ambiguity in the instruction was clarified by appellant's Instruction No. D–11 which was as follows: "You are instructed that if you find and believe from the preponderance or greater weight of the evidence that the death of William T. Dorsey was caused by myocardial degeneration and bronchiectasis and emphysema and that William T. Dorsey did not receive any injuries to his heart, lungs or chest at the time mentioned in evidence which directly contributed to cause the death of said William T. Dorsey, then your verdict must be in favor of the defendant." Instruction No. 1 was not a misdirection. At most it contained an ambiguity which was cured by appellant's Instruction No. D–11. Losh v. Ozark Border Electric Cooperative, Mo.Sup., 330 S.W.2d 847.

Appellant's last point is that the court erred in giving respondent's Instruction No. 2 because (a) it is in conflict with Instruction No. 1 in that No. 1 "limits plaintiff's recovery to damages for injuries received * * * which caused death," and No. 2 "permits the jury to award damages for any consequential effect with regard to the then physical condition" of Mr. Dorsey; and (b) Instruction No. 2 erroneously refers the jury to Instruction No. 1 to determine the issue of the contributory negligence of Mr. Dorsey although that instruction "does not define or hypothesize the contributory negligence" of Mr. Dorsey.

As to contention (a). Neither Instruction No. 1 nor No. 2 is a measure of damages instruction, and neither "limits" nor "permits" damages for anything. Both pertain solely to the issue of liability. Instruction No. 3 was the measure of damages instruction, and appellant does not object to it.

As to contention (b). The court gave appellant's requested instruction submitting the affirmative defense of contributory negligence. Therefore, Instruction No. 1 properly and necessarily contained a provision negativing contributory negligence. Moore v. Ready Mixed Concrete Company, Mo.Sup., 329 S.W.2d 14, 24. The phrase in Instruction No. 2 that "if you find the defendant negligent and the deceased free of contributory negligence as set forth in Instruction No. 1" could not possibly have been confusing or misleading to the jury. It is true that the contributory negligence was hypothesized in Instruction No. D–9, but what was "set forth" in Instruction No. 1 was exactly what Instruction No. 2 said: that if the jury found the facts as there hypothesized its verdict should be for the plaintiff "unless you believe from the evidence deceased was guilty of negligence which contributed to his death."

We find no error prejudicial to appellant, and the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.