Rufus ADKINS, Plaintiff-Respondent,

v.

SUTHERLAND LUMBER COMPANY, Inc.,
a corporation, Defendant-Appellant.

No. 22399.

Kansas City Court of Appeals. Missouri.

Nov. 4, 1957.

18

John L. Sheridan, Donald E. Raymond, Kansas City, for appellant.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, for respondent.

PER CURIAM.

This is an appeal by defendant from a judgment in favor of plaintiff for $7,500. Jurisdiction is in this court. Section 3, art. V, Constitution, V.A.M.S.

The action arose out of a fall by plaintiff (respondent) at defendant's (appellant's) lumber yard in Kansas City. Defendant does not contest the fact that plaintiff received the injuries complained of at the time and place alleged, and concedes that the amount of the verdict is proper, if, under the evidence, plaintiff is entitled to a verdict. Evidence touching such questions will not be mentioned.

■ The issues on appeal are: (a) That the court erred in not directing a verdict for defendant for the reason that there is no substantial evidence to support the allegations of negligence submitted by the instructions; and (b) that plaintiff was guilty of contributory negligence as a mat-

ter of law. In determining these issues, we must view the evidence in the light most favorable to the plaintiff and give him the benefit of all inferences reasonably to be drawn therefrom. Plaintiff's case cannot fail as a matter of law, because of lack of evidence or because of contributory negligence, unless the evidence and the inferences reasonably to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ on the issues submitted to the jury. See an array of cases cited, Mo.Dig. Vol. 22, Negligence, ■

To better understand the grounds of negligence submitted, and the evidence relative thereto, we set out the material part of plaintiff's Instruction No. 1. It required the jury to find that plaintiff was a business invitee on defendant's premises; that while there he was invited by defendant's employee, Bialek, "to go upon the lumber stacks in one of defendant's lumber sheds; that while on the lumber stacks plaintiff was invited by Bialek to follow (him) * * *; that plaintiff accepted said invitation * * *; that as plaintiff was so following * * * Bialek stepped down onto a lower stack of lumber; that the step-down was approximately 18 inches; that the lower stack of lumber was approximately 38 to 46 inches wide; that the lumber in said lower stack was stacked finished-side to finished-side and was likely to slip and fall when stepped upon; that the step-down was not obvious to plaintiff in the exercise of ordinary care; that plaintiff did not know said step-down was present and how said lower pile of lumber was stacked and of its width; * * * that Bialek did not warn plaintiff of said step-down and of the width of said lower pile of lumber and the manner in which it was stacked; that Bialek stepped onto said lower pile of lumber in such a manner as to cause the top boards thereof to slide and fall onto the ground as plaintiff was in the act of stepping down onto said lower pile of lumber; that the step-down and the sliding boards caused plaintiff to lose his

balance and footing and * * * to fall to the ground; * * * that in the exercise of ordinary care defendant * * * knew or should have known of said step-down and that said lower pile of lumber was approximately 38 to 46 inches wide and was stacked finished-side to finished-side and was likely to slip when so stepped upon, * * * in time to have warned plaintiff of said conditions before plaintiff stepped upon said lower pile of lumber; that defendant failed to warn plaintiff thereof; and that in failing to warn the plaintiff thereof, * * *, the defendant did not exercise ordinary care for the safety of plaintiff and that the defendant was thereby careless and negligent; *and* that the act of Bialek in stepping down on said lower stack of lumber so as to cause the top boards thereof to slide to the ground, while plaintiff was in the act of stepping down onto said lower stack of lumber, was a failure by the defendant * * * to exercise ordinary care for the safety of plaintiff, and * * * was thereby careless and negligent; and that as a direct result of said carelessness and negligence * * *", plaintiff was injured, etc.

Thus the charge of negligence in failing *to warn* consists of three elements: (a) The presence of a step-down; (b) the presence of the lower pile of lumber, which was 38 to 46 inches in width; and (c) that the lower stack of lumber was arranged finished-side to finished-side and was likely to slip when stepped upon. Plaintiff's theory is that those three conditions together created a dangerous situation of which he was entitled to be warned.

The second ground of negligence, which was submitted in the conjunctive, consists of the act of Bialek in stepping down on the lower stack of lumber under existing conditions, thereby causing the boards to slide to the ground while plaintiff was in the act of stepping onto said lumber.

The evidence stated in the light most favorable to plaintiff, is substantially as follows: Plaintiff was a carpenter-contractor; defendant owned and operated a lumber yard in Kansas City; plaintiff had been a customer of the defendant at this yard for more than 10 years and during that time had made more than 200 purchases of material. About 4:30 p. m. on January 2, 1953, plaintiff drove his truck to the office of the defendant and placed an order for certain type lumber; Mr. Bialek, an employee of defendant, told plaintiff he would show him the lumber and they drove plaintiff's truck to a shed about a block away, where the lumber was stored. This shed was approximately 150 feet wide and 250 feet long; the length of the building extends east and west. They drove plaintiff's truck into a passageway near the middle of the shed. The lumber was stacked on three different levels or, as referred to by the witnesses, "decks". The lower deck was at ground level and was a concrete floor. The second deck was a wood floor and there was a passageway or "catwalk" along the west side of the second deck approximately 3 feet wide, with a railing; along the north side of the second deck was another catwalk with railing approximately 2 feet wide. The third deck was a wood flooring upon which lumber was stacked. There were ladders extending from the ground to the second and third decks. On the day in question, various types of lumber, in various heights, were stacked on all three decks. After the truck was driven into the shed, Bialek told plaintiff to remain on the ground and he would ascend to the second deck and pass down to him specimens of the lumber desired. This was done, and plaintiff was not satisfied with that material. Bialek then told plaintiff, "Come on over here and I will show you some that is better." Plaintiff and Bialek ascended the ladder to the third deck. The lumber on the third deck was stacked in a north and south line and the stacks were of different height from approximately 2 feet to 4 feet. After reaching the third deck, Bialek led the way and was about one or two steps ahead of plaintiff, and slightly

to his right. They passed over some of these uneven stacks, and walked north on lumber stacked about 2 or 3 feet high. This stack ended at the north edge of the third deck. Bialek stepped across the two-foot catwalk onto a stack of knotty pine lumber, which, plaintiff said, was about 18 inches below the stack of lumber on which they were walking and was 38 to 46 inches in width. When Bialek stepped onto the knotty pine stack, some of the top boards slipped, and at that instant the plaintiff was in the act of stepping and continued his forward motion and fell to the ground. The knotty pine was stacked in an east and west line, while the lumber upon which plaintiff was walking was stacked in a north and south line. Thus the stacks were at right angles. The knotty pine was stacked from the ground floor to within 18 inches of the lumber on which plaintiff and Bialek were walking. In other words, there was an 18-inch step-down and a 2-foot open space between where Bialek and plaintiff were walking and the top of the knotty pine. The knotty pine boards were 16 feet long and 12 inches wide and the stack was 4 boards wide and extended about 14 feet above ground level. Plaintiff testified that he did not know of the step-down and was not warned by Bialek. The point of the step-down was about 16 feet above ground. When Bialek stepped onto the knotty pine and the boards slipped, he turned and took hold of the lumber upon which they had been walking and did not fall.

Plaintiff testified, "As we proceeded north on this material pile upon the third stack, * * * Mr. Bialek was a pace or so ahead of me, * * * and it appeared to me he stepped down just a little bit and he swung himself around. That is all that I remember seeing, is the board moving and he spun himself around and was grabbing the boards that were near. Looked like a pile stacked there. The north side of this material pile that he had stepped on, the boards were sliding when I had made my step onto it and I could not catch my-self. I fell in between two piles of lumber. I believe at that time there were three piles of lumber north of a catwalk, north of this deck. * * * The lighting in the building seemed to be good, it seemed that the building was light, the lights were on, however, the lights were high and there was a shadow, we were walking in a shadow. I could see very well where I was going, it wasn't too dark in there but the lights were on. * * *

"Q. Did you see this catwalk that Mr. Bialek stepped down on? A. No, sir, I did not.

"Q. Did he say there was a catwalk there? A. No, sir, he did not.

"Q. Do you know why you did not see the difference in the elevation there? A. No, sir, I don't know why I didn't see. It looked like the lumber was all just one solid stack of lumber to me."

On cross examination plaintiff testified, concerning his ability to see the conditions on the third deck, as follows:

"Q. You didn't have any difficulty in seeing? A. Well, no, I could see pretty well. * * *

"Q. There wasn't anything to obscure your vision ahead as you walked there? A. No, there wasn't. * * *

"Q. Actually, your eyesight wasn't a factor in this thing? A. I had good eyesight, the lighting was very well.

"Q. There wasn't anything to obscure your vision that was a factor in this thing? A. No, there wasn't. * * *

"Q. Isn't that a dangerous situation when you are that high above ground working on irregular piles? A. It certainly is.

"Q. You are watching very carefully where you are going? A. At all times.

"Q. You were on this occasion? A. I certainly was. * * *

"Q. Did you step across the catwalk when you made your step? A. We had to. * * *

"Q. You never did see the catwalk? A. No, sir. * * *

"Q. You never saw the knotty pine? A. Not until after I landed on it.

"Q. Was there anything you can tell us that prevented your seeing the pile of knotty pine? A. No, sir, there wasn't. * * *

"Q. Was there anything to obstruct your vision of this wide opening between these two piles of lumber? A. No, sir, there wasn't. * * *

"Q. You were being careful, watching your step? A. I certainly was.

"Q. But you can't account for your failure to see any of these things? A. This was a happening I can't account for."

Plaintiff further testified that he knew the third deck did not extend the full width of the shed because of driveways used for loading and unloading lumber. In other words, he knew there was an open space between the north edge of the third deck, toward which he was walking, and the north wall of the shed. He also stated that the knotty pine lumber was "stacked in the usual manner * * * it was a nice stacked pile of lumber. Q. In the proper manner as you know it? A. According to me." He did say that immediately after he fell, Bialek "explained to me why they had slipped. He said because they were stacked face to face and the boards were terribly slick, when he stepped on them he started them falling."

It is conceded that plaintiff was an invitee, hence it was defendant's duty to exercise ordinary care to prevent injury to him. Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.2d 605; Cash v. Sonken-Galamba Co., 322 Mo. 349, 17 S.W.2d 927. The basis of liability of the possessor of land to his business invitee for injuries resulting from conditions existing on the premises is the possessor's superior knowledge. State ex rel. First National Bank in St. Louis v. Hughes, 346 Mo. 938, 144 S.W.2d 84. He is liable "if, but only if, he knows the condition," which involves an unreasonable risk of harm to his invitee, and fails "to make the condition reasonably safe, or to give a warning adequate to enable invitee to avoid harm". 2 Restatement, Law of Torts, Sec. 343. Conversely, it is also well established that a defendant landlord is not liable to his business invitee for injuries resulting from an open, obvious condition, just as well known to the invitee as to the owner. If the invitee is aware of the situation or it is such that he could not but be conscious of it, and the consequences of disregarding it, if he were using his faculties, he cannot recover. Neither is he entitled to a warning because he has all the information a warning would give him. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393; Harper v. First National Bank, Mo., 196 S.W.2d 265, 267.

In the very recent case of Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 419, the supreme court reviewed an array of cases concerning the duties and obligations of an inviter and an invitee and announced this conclusion: "These decisions mean that an inviter is under no duty to protect an invitee who is in an equal position to protect himself. Where the danger is obvious or known to the invitee he consents to the risk and the inviter owes no duty. In other instances the danger may be discovered by the exercise of due care and the defense of contributory negligence is available."

There is no exact test or formula by which it may be determined, as a matter of law, that a condition is so open and ob-

vious that an invitee is charged with knowledge of its existence and consents to the risk. Each case must depend on its own facts and circumstances. Summa v. Morgan Real Estate Co., supra; Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14.

It is conceded that defendant's agent, Bialek, invited plaintiff to follow him across the third deck to look at lumber which was for sale; consequently, plaintiff was lawfully at the place of the accident and entitled to the protection which an inviter owes an invitee. We are of the opinion that the defendant is charged with knowledge of the manner in which the lumber was arranged at the point of the accident; and that the existing situation presented a dangerous condition to a person approaching as plaintiff was. It is conceded that Bialek gave no warning of the danger. The vital question is whether the danger was so open and obvious to the plaintiff, in the exercise of ordinary care, that it can be said, as a matter of law, that he knew, or should have known, of the danger and assumed the risk.

■ Plaintiff argues that when Bialek invited him to follow to another part of the building, he had the right to *assume* that the course to be travelled was reasonably safe and that he would not be led into a position where he would be injured. But this does not mean that plaintiff had the right to blindly follow Bialek. He, as all other invitees, was required to exercise due care for his own safety. All the cases so hold.

■ In support of his contention that he had the right to *assume* that the course of travel was reasonably safe, plaintiff cites Nephler v. Woodward, 200 Mo. 179, at page 188, 98 S.W. 488, at page 490, and quotes the following from that opinion: "She [plaintiff] was not bound to be on the lookout for holes in the carpet when the usher was showing her to the seat. She

had a right, in the absence of any warning to the contrary, to presume that it was safe to follow where the usher led the way." However, in that case, the plaintiff was being led along an aisle provided for customers in a "dimly and insufficiently lighted" theater. That is not the situation in the instant case. Plaintiff knew he was walking in a place not provided for customers; he knew of the unevenness of the stacks of lumber; and he knew the stack upon which they were walking ended short of the wall. He testified that the lighting was good; that he was "watching very carefully" where he was going; and that there was nothing to obstruct his view of the situation.

In Geninazza v. R. U. Leonori Auction & Storage Co., Mo., 252 S.W. 417, 420, the plaintiff was invited to follow the agent from one storage room to another and while doing so fell down a stairway. She testified, "Q. You didn't see the steps at all? A. No, sir; I looked down and I didn't see; it was so dark that you couldn't see; * * *". In referring to the above quoted sentence from the Nephler case, the court held that in view of the fact that plaintiff knew she was approaching a stairway, "she did not unqualifiedly have the right to 'follow her conductor and fear no danger.'" In the instant case, plaintiff knew he was approaching the end of the lumber on which he was walking, and that he was 16 feet above ground. It was his duty to be alert and use due care.

Plaintiff also cites Kennedy v. Phillips, 319 Mo. 573, 5 S.W.2d 33. In that case, the plaintiff fell in an open and unguarded elevator shaft. There, again, the court said, 319 Mo. at page 588, 5 S.W.2d at page 39: "The light was not sufficient to enable plaintiff to see and appreciate the danger". Likewise in Welch v. McAllister, 15 Mo. App. 492, where the plaintiff fell in an open hatchway. The question of insufficient light was an essential element of the issue whether the defendant should warn the invitee. Also in Capstick v. T. M.

Sayman Products Co., 327 Mo. 1, 34 S. W.2d 480, the plaintiff fell on a flight of stairs. The court emphasized the lack of light to disclose the defective condition of the steps and distinguished that case from others by stating, 327 Mo. at page 483, 34 S.W.2d at page 483: "Nor are cases in point which hold that if there be enough light to disclose the existence and general character of the stairway, it is sufficient."

The facts in these cases distinguish them from the instant case. They pinpoint the key fact that the invitee, in the exercise of due care, did not or could not see the danger because of insufficient light, or other obstructions to view. There are many other cases to the same effect.

We have held, supra, that the existence of the 18 inch step-down onto the knotty pine stack which was 38 to 46 inches in width and from 10 to 13 feet in height, and the likelihood of the top boards thereof moving when stepped upon, created a condition which the defendant should have reasonably anticipated would cause injury to an invitee walking thereon, or at least it would be a question for the jury. However, this would merely establish defendant's duty to warn. It would not relieve the invitee from seeing and observing that which was obvious.

Briefly summarized, plaintiff's testimony is to the effect that he was an experienced carpenter-contractor; that he had purchased lumber from the defendant on more than 200 occasions during the past 10 years; that he knew lumber dealers stacked lumber according to its dimensions and grade and in different height stacks; that as he and Bialek walked across the third deck they had to step up on certain stacks and down on others; and that he knew the third deck did not extend to the north wall of the shed toward which they were walking. Consequently, he knew the stack of lumber upon which he was walking would end short of the north wall, and was 14 to 16 feet above ground. He admitted the lighting on the third deck was reasonably good; that he could see "very well"; that

there was nothing to obscure his vision of the situation; that he knew walking on irregular stacks of lumber at the height of the third deck presented a dangerous situation and that he was watching very carefully where he was going, but that he did not see the step-off or the knotty pine stack until it was too late to regain his balance. When asked why he didn't see the existing conditions, he answered, "This was a happening I can't account for".

It is true plaintiff had never been on the third deck before; however, he knew he was walking over irregular stacks of lumber, and was not walking along an aisle or pathway provided for customers. This would make it all the more his duty to be on the alert for unsafe conditions.

Under the evidence, considered in the light most favorable to the plaintiff, it is our conclusion that the defendant was not negligent *for failure to warn* the plaintiff of existing conditions because such conditions were open and obvious, and could be seen by anyone in the exercise of due care.

However, plaintiff contends that he is entitled to recover on the second ground of negligence which was submitted in the conjunctive. This ground of negligence, after requiring certain findings as noted in Instruction No. 1, supra, is as follows: "* * * *and* that the act of Bialek in stepping down on said lower stack of lumber so as to cause the top boards thereof to slide to the ground * * * while plaintiff was in the act of stepping down onto said lower stack of lumber * * * was a failure by the defendant * * * to exercise ordinary care for the safety of plaintiff * * * and that the defendant * * * was thereby careless and negligent * * *". This language must be read and considered in connection with the preceding facts to be found as set out in the instruction.

On this issue of negligence we are not concerned with the question of warning of an unsafe place. The question is whether

defendant's agent, Bialek, was negligent in stepping onto the knotty pine lumber and causing it to move when he knew plaintiff was immediately behind him and in the act of stepping thereon.

Defendant argues that there is no evidence "that Bialek was negligent in the manner in which he stepped onto the knotty pine". It is true plaintiff testified that there was nothing unusual about Bialek's movement or the manner in which he stepped down. But that is not the theory of this ground of negligence. The theory is that Bialek did an act which was negligence for him to do under existing conditions; not that he did it in a negligent manner. He knew that plaintiff was immediately behind him; that they were approaching a step-down; that there was an open space of at least 24 inches; that the stack of lumber upon which he would step was only 38 to 46 inches in width and 10 to 14 feet in height; that it was finished lumber, stacked smooth side to smooth side; that "the boards were terribly slick;" and that in stepping from the lumber, upon which they were walking, to the knotty pine stack, he would be required to step downward and forward at an angle for a distance of at least 3 or 4 feet. Because of his experience and familiarity with smooth stacks of lumber, we think it is a reasonable inference that he knew or, in the exercise of ordinary care, should have known that in stepping upon the pine lumber, as he was required to do, there was danger of the top boards moving and falling and furnishing an insecure place for plaintiff to step. Certainly, such facts present an issue to be submitted to the jury. And plaintiff was not guilty of contributory negligence, as a matter of law, because at the time Bialek made his step, the plaintiff was in the act of stepping and could not regain his balance after seeing the boards moving.

This ground of negligence, having been submitted in the conjunctive, and being supported by the evidence, requires an affirmance of the judgment. It is well established in this state that when the grounds of negligence on which an instruction directs a recovery are stated in the conjunctive, then if one of the grounds is alone sufficient to warrant a recovery, it is not error if another ground submitted is without evidence to support it. Hodgins v. Jones, Mo.App., 64 S.W.2d 309, 312.

The judgment is affirmed.

All concur.