LORRAINE DUCAS *vs.* LOUIS D. PRINCE & others.[1]

Bristol.    October 28, 1957. — December 26, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Negligence*, Skating rink, Contributory, Due care of child, Assumption of risk.

In an action against the proprietor of a skating rink by a twelve year old girl patron for personal injuries sustained when the lace of one of a pair of shoe skates hired from the proprietor's attendant broke and loosened the shoe and she was caused to fall, the evidence warranted a finding of negligence of the proprietor in that the laces of the shoes hired by the plaintiff were weakened and defective by age and wear and that the attendant in the exercise of due care should have known of their condition, and did not require a ruling that the plaintiff was guilty of contributory negligence or that she assumed the risk of injury.

TORT.    Writ in the Superior Court dated April 9, 1953.

The action was tried before *Hurley*, J.

*Gerald P. Walsh*, for the defendants.

*John F. O'Donoghue*, (*H. William Radovsky* with him,) for the plaintiff.

COUNIHAN, J.    This is an action of tort brought by a minor against the defendants who operated a roller skating rink in North Dartmouth. She seeks to recover damages for personal injuries which she allegedly suffered by reason of the negligence of the defendants. The defendants' answer was a general denial, contributory negligence of the plaintiff, and assumption of risk by the plaintiff. There was a verdict for the plaintiff and the action comes here upon the defendants' exceptions to the denial of their motion for a

---

[1] Thomas F. Collins and Max Zand.

directed verdict and the denial of their motion for the entry of a verdict under leave reserved. There was no error.

There was evidence that the plaintiff was twelve years old at the time of the accident on March 28, 1953. In company with another girl she went to the skating rink on that day around eleven o'clock A.M. They waited until the booth at which skates were rented opened. When it did both girls rented shoe skates from an attendant. He took them from one of several shelves upon which seventy-five to a hundred pairs of skates rested. While waiting for the girls to pay the rental charge the attendant had the shoe skates in his hand "maybe a minute and a half." When the plaintiff received the skates she went over to a bench to put them on. She then noticed the condition of the shoe skates. They were white and somewhat dirty. The shoe laces were dirty and were tied with knots in some places where they had been broken, particularly on the right shoe. The ends of the laces were flat and one of the tips was missing. While putting on this shoe one of the lacings broke and another girl tied it up by knotting it. These knots were at the top and middle of the right shoe.

After the shoe skates were firmly affixed to her feet she began skating around the rink and continued to do so for about an hour and a half. After an intermission she began skating again. Shortly thereafter she was skating backward and had just turned to go forward when she "felt something like the shoe lace break, the skate became loose, her ankle twisted and she fell" and sustained injury. She noticed that the lacing on the right shoe was broken down near the bottom of the shoe where there were hooks instead of eyelets.

We are of opinion that the defendants were under a duty to use reasonable care to furnish the plaintiff with equipment which could be safely used for the purpose for which it was intended. From the evidence it is plain that the jury could warrantably have found the following: that the plaintiff was the first person to receive these shoes on the morning of the day of the accident when the rink opened for

business; that the attendant should have observed the condition of the shoe laces when he put them back on the shelf earlier or at least when he handed them to the plaintiff for rental; that it was apparent that the laces had become so weakened by age and wear as to be defective; and that the attendant of the defendants by the exercise of reasonable diligence ought to have known of their condition. *Doherty* v. *Booth,* 200 Mass. 522, 524–525. *Brady* v. *Great Atlantic & Pacific Tea Co. ante,* 386, 390. See *DiRoberto* v. *Lagasse, ante,* 309, 312.

There are many other analogous cases in which it has been held that negligence could have been found in circumstances similar to those in the case before us. *Lynch* v. *Richardson,* 163 Mass. 160. *Foley* v. *O'Flynn,* 288 Mass. 504, 506–507 (renting of vicious horses). *Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334. *Noble* v. *Park Enterprises, Inc.* 313 Mass. 454. *Bell* v. *Dorchester Theatre Co.* 314 Mass. 536. *Matthews* v. *L & L Enterprises, Inc.* 314 Mass. 538. *Beaulieu* v. *Lincoln Rides, Inc.* 328 Mass. 427. *Couris* v. *Casco Amusement Corp.* 333 Mass. 740 (defective chairs or equipment on premises).

There is no merit in the contentions of the defendants that the plaintiff as matter of law was guilty of contributory negligence or that she assumed the risk of injury. It must be remembered that the plaintiff was only twelve years old at the time of the accident. It has been said in somewhat similar circumstances that a "situation, which might carry plainly to the mind of an adult comprehension of danger, might make little or no impression upon a child. This might arise either from immaturity or from the lack of the caution and judgment natural to youth." *Berdos* v. *Tremont & Suffolk Mills,* 209 Mass. 489, 495.

*Exceptions overruled.*