Agnes TRAUTLOFF, Appellant,

v.

DANNEN MILLS, Incorporated, Respondent.

No. 22794.

Kansas City Court of Appeals.
Missouri.

Oct. 6, 1958.

Brown, Douglas & Brown, St. Joseph, for appellant.

Smith, Sherwood, Utz & Litvak, St. Joseph, for respondent.

SPERRY, Commissioner.

This is a suit by Agnes Trautloff, plaintiff, against Dannen Mills, Inc., defendant, for damages for personal injuries received when she fell from defendant's unloading dock. The jury rendered a verdict for plaintiff in the amount of $5,500 and, from the judgment thereon, defendant has appealed.

One of the points presented by defendant on this appeal is that plaintiff failed to make a submissible case. We will state the facts in evidence from the standpoint most favorable to her.

Defendant operates a mill and processing plant, in St. Joseph, including equipment for the processing of soybeans. There are a number of buildings located on either side of an areaway which extends from north to south. At the north end thereof, on the east side, is a scale house. Some 250 feet south there is the beginning of a ramp, at the south end of which there is a dock onto which trucks are driven and unloaded. The areaway is level except for the ramp and dock. The ramp is 15 feet wide and 100 feet long. It gradually rises to an elevation of four feet, to the level of the dock.

The dock is 60 feet long. The south 50 feet is a level platform of boards and is 10 feet wide, from east to west. Two four inch angle irons are fastened to the boards the entire length of the platform, one a few inches from each outer edge of the platform. Trucks are driven so that the wheels run between these rails. The north 10 feet of the dock is made of iron bars, so spaced as to permit grain, when dumped from trucks, to pass between them into a hopper underneath. From the hopper the grain is elevated and carried to various bins.

At or near the south end of the wooden platform there are large steel beams on either side to which are attached cables, pulleys and other mechanism designed to hydraulically lift the front end of the platform, thereby tilting the truck, so as to permit grain to slide out at the back end, into the hopper. At the north end of the platform there are blocks which, when the truck is in position, are raised so as to prevent the wheels from rolling backward when the front end is elevated. The platform is 10 feet wide but there is a one foot wide concrete wall on either side, extending the entire length of the dock, the top being level with the top of the platform, making the overall width 12 feet.

On the east side of the areaway there are a number of large grain bins, or tanks, ranging from north to south, and the dock lies close thereto, adjacent to the tanks. A few feet north of the north end of the dock there is a structure housing a grain elevator mechanism. To it is attached a reflector, 20 inches long, 14 inches wide and 12 inches deep. It houses a 1000 watt bulb. The fixture is several feet higher than a truck bed and is so adjusted as to aid defendant's employees in operating the lift mechanism and clearing the grain from the truck. The light was burning on the night this accident occurred.

Across the areaway, west from the dock some 30 or 40 feet, is a building and, to the north of this building are a number of bins. On top of one bin there is a thousand watt light bulb pointing north, and on the top of another bin is a similar bulb pointing east. The latter bulb is located some 160 feet from the point where plaintiff fell. It is 64 feet from the ground and 32 feet west of a building which is 57 feet high. These lights were burning when the accident occurred, according to some testimony, but plaintiff and her husband stated that they did not see them and that there was no illumination at the docks from them.

Plaintiff and her husband operate a farm, as partners. Plaintiff testified to the effect that on October 1, 1955, her husband had combined soybeans; that, after dinner, her husband drove their truck, loaded with beans, to defendant's plant; that it was dark when they left their home and the truck lights were burning; that she rode with her husband on the truck for the purpose of learning the method of unloading so that she might, the following day, deliver truck loads of beans while her husband operated the combine; that it was about 8:00 p. m. when they arrived at the plant; that the truck was weighed at the scale house and they then proceeded south along the areaway to the ramp, and onto the wooden platform; that an employee of defendant got on the running board at the scale, and rode the truck to the dock; that he talked to plaintiff and her husband about the new scale house; that after the

truck was stopped and while the employee was adjusting the blocks and preparing to hoist the platform, she told her husband that she would get out before the truck was elevated; that he had the left door open and was watching the hoisting operation; that she had been told that it was not the custom for anyone to stay on a truck when the platform was tilted; that she opened the door and, holding to the front and back of the doorway, stepped one foot down, then the other, so that she stood on the platform between the opened door and the body of the truck; that, in order to get clear from the truck "out of the way", when it was hoisted, she took one step away from it, and fell from the platform; that "the boy was ready to raise the truck and that was the reason I took the step to get out of the way of the truck being raised"; that she could not see the edge of the platform when she stepped; that there was no artificial light from any source that illuminated the dock west of the truck; that there was no barricade or rail along the west side of the dock, as she had expected; that it was only about 18 inches from the truck to the west side of the platform; that she called to her husband to help her, which he did; that defendant's employee, who was present, stated that the bulb east of the truck was coated with soybean dust so that it did not "show enough light down there." She stated that defendant's engineer, who came to the hospital where she was taken that night, asked her to write defendant of the dangerous condition of the dock, stating that he had plans which he had submitted to the company but nothing had been done about them.

Plaintiff had hauled and delivered one load of grain at this dock about a year before this accident occurred. She stated that she got out of the truck, on that occasion, on the east side, and that she did not observe the situation on the west side as to distance between the truck and the dock edge, or as to railings; that she knew that the distance on the east side was 18 inches and that there was no railing. She stated that on both occasions, as the truck approached the dock, she could see the dock clearly but her attention was directed to watching to see that the truck entered between the angle irons and was properly placed for unloading; that on the first occasion she was watching the left of the dock and got out on that side.

Mr. Trautloff testified to the effect that plaintiff and he were full partners in their farm operations, including the delivery of the beans; that plaintiff had, previous to the accident, performed virtually all types of work done in the farming operations; that she drove tractors, operated practically all the machinery, had driven their truck to market with grain, and had operated their self-propelled combine; that, after the accident she had done no outside work on the farm; that he had delivered several loads of grain at this dock; that he knew there were no guard rails along either side of the dock; that the distance on either side, between the truck and the dock edge was about two feet; that, when the truck doors were open they would cover the entire dock; that there was a light at the scale house and one on the east side of the dock at the north end, but that it was covered with soybean dust; that it was dirty and dusty and "there wasn't much light;" that he saw no other lights; that the west side of the truck was "shadowed, no light;" that he drove the truck in low gear from the scale house, where an employee of defendant got on the running board and talked to plaintiff and him about the new scale house; that the truck lights were on and he could see the dock; that he stopped the truck on the wooden platform and was watching the boy adjusting the blocks behind the truck wheels; that he opened the door and was looking back, watching him; that the truck has to set on the dock squarely so that the blocks, when the platform is tilted, will not come against the truck springs; that plaintiff said: "I will get out before you back up" and that he told her to do so; that he heard her call and, when he went around to the west side

of the dock, he found her on the ground; that he sent her to hospital; that he had unloaded at this dock several times and knew there were no guard rails and knew that it was but two feet from either side of the truck to the dock edge, but that he had not previously been there at night and had never gotten out of the truck on the west side. In rebuttal, he stated that defendant's engineer, at the hospital the night of the accident, asked plaintiff to write defendant of the dangerous condition of the dock, stating that he had submitted plans thereon but nothing had been done.

Defendant claims its motion for directed verdict should have been sustained because plaintiff failed to prove any negligence and because she was guilty of contributory negligence as a matter of law.

"Plaintiff's case cannot fail as a matter of law, because of lack of evidence or because of contributory negligence, unless the evidence and inferences reasonably to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ on the issues submitted to the jury." Adkins v. Sutherland Lumber Co., Inc., Mo.App., 307 S.W.2d 17, 18.

Plaintiff's Instruction 2 submits her theory of the case, and directs a verdict. Inasmuch as defendant presents several criticisms of it, we will set it out in full:

"The Court instructs the jury that one who occupies a business house or establishment and invites the public to trade with it for their mutual benefit is bound to keep its premises including its unloading dock or platform in a reasonably safe condition for use by the plaintiff and other persons in the exercise of ordinary care for their own safety and who were lawfully using the same and if you find and believe from the evidence that on the first day of October, 1955, the plaintiff with her husband left their farm with a truck load of soybeans to deliver and sell the same to the defendant Dannen Mills, Inc., at its Lower Lake Road plant, and that the plaintiff and her husband arrived at said plant, at approximately 8:00 p. m., when it was dark, and if you further find and believe that the employees, servants and agents of defendant directed plaintiff's husband to drive their truck upon an unloading platform or dock, and if you further find and believe from the evidence that said unloading platform was so constructed that its platform was four feet above ground level, and that the west side of the platform of said dock extended for a distance of about eighteen inches from the track of the dock, and if you further find and believe from the evidence that as the plaintiff stepped from the truck she first stepped on the portion of said platform to the west of the truck and on her second step she stepped over the west edge of the platform of said dock causing her to fall, if so, and if you further find and believe from the evidence that said open platform as constructed was not of sufficient width to safely permit persons exercising ordinary care for their own safety to get out of a truck on the west side or right side thereof without danger of falling therefrom, and if you further find and believe from the evidence that there was only one light above said platform which was covered with dust and so located that a shadow was cast by the truck sitting on said dock in a position to unload so that said shadow obscured the west side of the platform where plaintiff stepped out of the cab of said truck and, if you further find and believe from the evidence that the plaintiff had no knowledge of the dangerous conditions of the platform of said dock prior to the time she fell from the same, if so, and if you further find and believe that the defendant's servants and employees knew or should have known that said platform as described in the evidence was not reasonably safe for the use of the plaintiff and carelessly and negligently failed to notify or warn the plaintiff of the dangerous condition of said platform, if so, and if you further find and believe from the evidence that as a direct result of the defendant's negligence, if so, plaintiff while in the exercise of ordinary care for her own safety was caused to fall from the top of

said platform and was thereby injured, if so, then your verdict will be for the plaintiff."

Defendant says that Plaintiff's chief claim of negligence is that it failed to warn her as to how the dock had been constructed but that there was no testimony tending to prove that the dock was negligently constructed because too narrow and lacking guard rails; therefore, she failed to make a submissible case. As we understand plaintiff's theory, it is the fact that the dock is so narrow as to make it dangerous at night *unless properly lighted* which, plaintiff testified, it was not.

In Dean v. Safeway Stores, Inc., Mo., 300 S.W.2d 431, 435, plaintiff fell and was injured when he stepped on a handle from a banana crate in an unlighted parking lot. *Neither he nor defendant knew the handle was there.* The court held that a submissible case was made by proof of the unlighted condition of the lot, plus the presence of the obstacle over which plaintiff fell. (Of course, here, defendant constructed and maintained the dock and the lights. It, therefore, knew of the conditions there and no notice was required.) The court held "that reasonable minds could differ, and the inferences of negligence and proximate cause were possible, permissible inferences and, together with the plaintiff's contributory negligence, were questions to be resolved by a jury." In Adkins v. Sutherland Lumber Co., Mo.App., 307 S.W.2d 17, at pages 22 and 23 this court discussed various cases and emphasized that insufficient light may excuse a plaintiff from seeing that which otherwise would be obvious.

█ Defendant maintained a light at the pit, and another, high up, pointing eastward toward the pit; but there was substantial evidence to the effect that the west side of the dock, where plaintiff fell, was in comparative darkness. The jury could have inferred that defendant was negligent in not maintaining efficient lights at the dock, in view of it being narrow and lacking any guard rail or wall. This point is ruled against defendant.

Defendant pleaded and submitted the issue of plaintiff's contributory negligence. The evidence on that issue is such that reasonable minds might well differ. She had seen the dock but once, a year prior to the accident. It was not shown whether it was then daytime or nighttime; but, if it was after dark, the dock may have been well lighted, at that time, on the *east* side, where she dismounted from the truck. She had never dismounted from the truck on the west side of the dock. One of defendant's employees rode the truck on the night the accident occurred, and talked to plaintiff and her husband about the new scale house. Also, she stated that she was paying particular attention to getting on the dock properly, so as to safely dump the load, on both occasions, as the truck approached the dock. In addition, when she stepped and fell, she was endeavoring to get free from the truck before it was elevated, which process was about to begin. Whether or not, under all of those circumstances, she was guilty of contributory negligence was for the jury to determine, not the court.

█ Defendant also urges that its motion for directed verdict should have been granted on the grounds that Albert Trautloff, plaintiff's husband, who was a joint adventurer with her in delivering the load of beans to defendant, was guilty of contributory negligence barring plaintiff's recovery. It rests this contention on the theory that, since plaintiff and her husband were joint adventurers, his admitted failure to warn plaintiff of the narrow dock, its height from the ground, and the absence of guard rails, all of which facts were known to him, constituted negligence as a matter of law barring her recovery.

If Mr. Trautloff had warned plaintiff of the danger, with which he was familiar, she could not recover. "Defendants were not liable in this case, for failure to warn alone, if it was shown that plaintiff had knowledge of the danger, regardless of the source of his knowledge." Carsel v. Mitchell, Mo. App., 261 S.W.2d 249, 251.

But defendant says plaintiff's action is barred whether or not she knew of the danger, if her co-joint adventurer knew thereof and failed to warn her. It cites and quotes from Par. 491, Restatement of the Law—Torts, as follows:

"Any one of several persons engaged in an enterprise is barred from recovery against a negligent defendant by the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to third persons injured by the negligence of a fellow member." Other authorities to that effect are also cited.

That rule applies only where the negligent joint adventurer is active, a movant, in the *movement* that caused the casualty. "The general rule asserts that negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it." Herrell v. St. Louis-San Francisco Ry. Co., 324 Mo. 38, 23 S.W.2d 102, 105. The instrumentality which caused her injury was not under the control of either plaintiff or her husband. See Haynie v. Jones, 233 Mo.App. 948, 127 S.W.2d 105, 107. If this were a case where plaintiff's husband, in driving the truck onto the dock, had negligently maneuvered the truck so that such negligence, coupled with some negligent act of defendant, had resulted in injury to plaintiff, the rule contended for by defendant might possibly, have application. In such case, plaintiff might be said to have had the right to control the operation of the truck. If she had been present in such circumstances, with power to direct and control the operation, and with full knowledge of the situation confronting them, her co-joint adventurer's negligence might be chargeable to her.

But here, she had no power to compel or to require her husband to speak. She had no knowledge, so she stated, of the dangerous condition which, she says, caused her injury. How, then, could she have directed her husband to warn her? Defendant's contention

is disallowed. Defendant says that Instruction No. 2 is erroneous. The court in the Instruction charged the jury that the occupant of a business house "is bound to keep its premises * * * in a reasonably safe condition for the use by plaintiff and other persons in the exercise of ordinary care for their own safety * * *." Defendant urges that such is not the rule, that defendant is not under a duty to keep the premises in a reasonably safe condition but rather defendant is only under the duty to exercise reasonable care to keep the premises in a reasonably safe condition. In Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623, 628, the rule as to the liability of a business inviter to his invitee as contained in 2 Restatement of the Law Torts, Sec. 343, is stated as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) *has no reason to believe that they will discover the condition or· realize the risk involved therein,* and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm, * * *," (Emphasis ours)

On the same page the court reiterated its previous declaration to the effect that the rule "is firmly embedded in the jurisprudence of this jurisdiction, * * * under the rule the defendant was only required to exercise ordinary care to prevent injury to plaintiff. The defendant * * * was not liable to plaintiff-invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant."

The measure of defendant's duty in a case of this kind, as stated in Wattels v. Marre, Mo., 303 S.W.2d 9, 19, is that it is required to *exercise ordinary care* to main-

tain its premsies in a *reasonably* safe condition. This is the correct rule and the Instruction as given is erroneous. We criticized the use of the word "bound" in Schaefer v. Kansas City, Mo.App., 270 S.W.2d 84, 86. Since the cause must be remanded it is suggested that the word not be used in another instruction if the case is retried.

Defendant's next criticism of the instruction is that it predicated a recovery for plaintiff if she had no knowledge of the alleged dangerous conditions, and omitted the necessary requirement that she could not recover if, in the exercise of ordinary care on her part, she could and should have known of such dangerous conditions." The rule is that a plaintiff may not recover for injuries caused by a dangerous condition, even if the condition was known to defendant, if it was one so obvious that it could or should have been known to plaintiff in the exercise of ordinary care for her own safety; that defendant is not required to warn an invitee of a danger known to it and unknown to the invitee if the danger is so apparent that it would or should have been known to the invitee. Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 475–476.

In that case the Supreme Court was considering an instruction similar to the one given in this case, and said, (at page 476) that the instruction directed a verdict for plaintiff "for failure to warn of a dangerous condition which was known to defendant, * * * and which was unknown to plaintiff, although the jury may have believed that, although plaintiff had no actual knowledge of the dangerous condition, such dangerous condition was such as reasonably would have been observed by an invitee in the exercise of ordinary care." The judgment was reversed on that ground. We can see no material difference between that instruction and the one here considered. In this case, defendant stressed the obviousness of the alleged danger, in the trial, and it was error to have ignored that issue in plaintiff's verdict directing instruction.

It is also noted that the instruction does not require the jury to find the dock to be in a dangerous condition, although it required a finding that defendant knew that it was not reasonably safe. It is assumed therein that the dock was in a dangerous condition. That question was in controversy, and the assumption of a controverted fact in a verdict directing instruction is erroneous and cannot be cured by another instruction. McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, 139–140. For the jury to be instructed that defendant is "bound" to keep its dock in a reasonably safe condition and, also, to be instructed that it was in a dangerous condition, is reversibly erroneous. In the event there should be another trial the instruction should be redrawn.

Plaintiff introduced into evidence four different sets of mortality tables, over the objection of defendant. Defendant assigns the ruling of the court thereon as error. The only ground it gives to sustain its contention is that "the testimony showed that respondent was not a normally healthy person. She suffered from advanced arthritis and from scoliosis of the spine prior to the accident. These conditions were permanent and disabling." Mortality tables are proper evidence in a case of this character but they are not infallible guides to life expectancy. Collins v. Star Paper Mill Co., 143 Mo.App. 333, 127 S.W. 641, 643–644; Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546, 549 et seq. In Peters v. Kansas City Rys. Co., 204 Mo.App. 197, 224 S.W. 25, 28, it was held that mortality tables are admissible in personal injury cases where the injury is claimed to be permanent, as in this case. But they merely constitute a guide, are not conclusive, and should be considered together with all the other evidence. To the same general effect is the holding in Gill v. Baltimore & O. R. Co., 302 Mo. 317, 259 S.W. 93, 97. The testimony here was that plaintiff was in good health prior to the accident; that she performed all kinds of farm labor, such as operating tractors, driving trucks, operating a self

propelled combine, doing farm chores, caring for chickens and doing all of the housework. In addition thereto, plaintiff was a witness and the jury saw her and could take into consideration her general appearance in arriving at their verdict. Defendant's contention, as to this point, has no merit.

Defendant claims the court erred in sustaining objections to the offered testimony of Mr. Dannen, to the effect that the conditions shown in a photograph of the dock, the lighting, and the surroundings, were the same as they were on the night the accident occurred. One of the hotly contested issues was whether the lights were sufficient to properly illuminate the dock on the night the accident occurred. Mr. Dannen admitted that he was not at the dock the night the accident occurred. It is evident that he could not testify that the conditions obtaining that night were the same as those shown in a photograph admittedly not made that night. The testimony was properly excluded.

Defendant complains of the court's refusing to permit its offer of testimony, by Mr. Dannen, its president, to the effect that a great many trucks had used the dock facilities since its construction, and that of all the drivers and others dismounting therefrom, none had been injured. Defendant claims Mr. Dannen's testimony was admissible because testimony on behalf of plaintiff was admitted, to the effect that other people than drivers had ridden trucks up to and on the dock, dismounting therefrom before dumping. Such testimony was admitted without objection and it was properly admissible to show that defendant knew of people, other than drivers, riding the trucks onto the dock and that they customarily dismounted before trucks were elevated for dumping. It was offered to prove notice to defendant of that custom and fact, not for the purpose of proving that the dock was or was not in a dangerous condition. If defendant had thought it might have some bearing as to a different subject, it could have offered a limiting instruction.

But was it proper for defendant to offer testimony to the effect that "thousands" of people had used the dock and none had been injured? Evidence tending to prove that others have been injured at a given place, under the *same* conditions and circumstances, and from the *same* cause or instrumentality is admissible. Cameron v. Small, Mo., 182 S.W.2d 565, 570; Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14, 19–20–21. However, Judge Anderson (St.L.) said, in the Newberry case, supra, at page 19, "On the other hand, it has been uniformly held in this state that evidence that no accidents or injuries occurred at a particular place other than the one in question is not admissible to show freedom from negligence on the particular occasion or that the place or appliance was safe and not dangerous." The court indulged in a very scholarly discussion of the question and ruled the testimony inadmissible.

After the court, in this case, had ruled the testimony inadmissible, counsel offered to prove by the witness that "to his knowledge none of the people, either drivers or passengers, about whom the plaintiff offered testimony have had any difficulty in getting off the dock and never fell or were hurt in getting off the dock." This is quite similar to the offer of proof made and rejected in the Newberry case, supra. For the reasons stated in that case we rule the trial court committed no error in rejecting the offer.

Defendant assigns as error a number of statements made by plaintiff's counsel in his closing argument. Since the case is to be remanded for a new trial it would serve no useful purpose to discuss and rule the questions presented under this heading.

Defendant also complains of the failure of the court to give its offered instructions 16 and 17, which purported to instruct the jury on the legal effect of Albert Trautloff's failure to warn plaintiff of the nature of the construction of the dock, if he knew of such conditions. What has previously been said has disposed of this point adversely to defendant's theory.

The judgment should be reversed and the cause remanded for a new trial.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion is adopted as the opinion of the court. The judgment is reversed and the cause remanded for a new trial.