J. G. **HUMBYRD**, Plaintiff-Respondent,

v.

Rosco and Nora **SPURLOCK**, d/b/a Ava Roller Rink, Defendants-Appellants.

No. 7923.

Springfield Court of Appeals.

Missouri.

April 14, 1961.

Clyde Rogers, Gainesville, for defend-ants-appellants.

William T. Powers, Jr., Springfield, for plaintiff-respondent.

RUARK, Judge.

This is an appeal from a $1,000 judgment for plaintiff-respondent, patron, against defendants-appellants, operators of a roller skating rink. The gist of plaintiff's complaint was that defendants negligently furnished plaintiff a pair of defective skates, that after plaintiff had called defendants' attention to the fact the wheels locked on the skates, defendants did not give plaintiff another, or safe, pair of skates but purported to remedy the defect, and that plaintiff, relying upon such correction, started to use the skates again, whereupon one of the skates locked and the plaintiff was caused to fall and suffer a broken leg.

The sole and only issue in this case is whether defendants' motion for judgment should have been sustained because the plaintiff's own testimony showed him to have been contributorily negligent as a matter of law. This involves a review of that portion of the evidence.

Plaintiff, thirty-three years old, had been a mechanic "off and on" about twelve years but was engaged in hauling milk at the time of his accident. He took his wife and children to defendants' roller rink. He had been there with his family before "so that my children could skate" and had skated some eight or ten times but was not an expert skater. He said he had had previous trouble with defective equipment at the rink. "Her skates never was too good." He had complained to defendants before and had been given different equipment (we assume skates) to use on those occasions. However, the skates had never locked on him before.

On the night in question he and a friend were sitting in the rink and (evidently after some teasing or bantering) he and the

friend decided to skate and both "rented" a pair of skates by payment of the required fee. He said his friend's skates were "so rackely that he [the friend] wouldn't even try to skate, but mine, I did try it and the first round around the rink they locked, but I didn't fall that time. So, I hobbled on in and requested a new pair of skates, another pair of skates that was fit to skate on." But apparently the proprietor did not have another pair of his size. The skates which plaintiff was wearing were boot skates (skates fixed to boots). The defendant proprietor undertook to adjust the skates. Plaintiff said he believed he remembered that defendant Spurlock took a wrench and tightened the nut and oiled the bearings on the left skate, rolled the wheels with his hands, and told plaintiff "to try 'em around the rink."

On this occasion the skates were not removed (it would have been necessary to take the boot from his foot), although plaintiff says he offered to. During the examination and treatment of the ailing skate plaintiff stood and held his foot up. Plaintiff did not examine the skates himself, did not touch them with his hands (it was "not too good" possible to look at them while they were on his foot), but he says he could see that the ball bearings on the inside of the left skate were worn out and loose. The witness said· he was familiar with ball bearings of the type used in the skates but had never worked on skates. He ventured the opinion:

> "Q. What would you say now was wrong with these bearings; what in your estimation caused them to be defective? A. Well, I believe on these because there was a loose, rough bearing in there."

He said he thought that Spurlock took a wrench and "tightened them up"; that this would remedy a loose bearing but not a rough bearing; and that a rough bearing would cause the skate to lock.

After this doctoring of the skate, plaintiff started around the rink again. He got halfway around and the skate again locked. He did not fall but "and then, as I came up on to where he was at to get 'em fixed, just before I got there, they locked and knocked me down. This left foot stopped, you see, and my right foot I couldn't stop in time, so I fell and busted my leg." He said the left skate stopped but the uninhibited right foot continued forward, went under a girl skater, knocked her feet from under, and she promptly sat down on plaintiff. And that is how plaintiff's leg was busted.

The skates were introduced in evidence as exhibits and the parties have brought them here and invited our inspection. We have looked at them, spun the wheels, and observed (through a circular slot about one-eighth inch wide) that they have little steel balls which we assume to be ball bearings. On the inner side of this slot and behind a nut are the little balls, which may be only partially seen. The whole assembly is inset some one-half inch inside the inner rim of the wheel, so it would appear to be practically impossible for one wearing the boot and standing on one foot to look down and even *see* the ball bearings, let alone determine, from so seeing (as plaintiff says he did), that the bearings were worn or loose, and at least as difficult to see that one of the bearings was rough. We observe nothing wrong with the skates, but we are doubtful that our observation is of any value. None of us is a skate expert; we do not feel that our judicial duties require any member of the court to put them on and try them in the corridors, and no one has been assigned or volunteered for such.

Appellants argue that plaintiff is bound by his own testimony; that such evidence shows that plaintiff, a mature man, a mechanic, knew from previous experience that the defendants' equipment in general was defective; that despite his companion's prudent refusal to skate plaintiff donned those issued to him and immediately discovered they were defective; that when he returned to have them changed he noticed a wheel had a rough, loose bearing; that he knew the repairs were inadequate;

that Spurlock's request to "try 'em again" was in itself a statement carrying doubt and warning as to the efficacy and safety of the skates; that after the second locking plaintiff was surely warned and that due care required that he then sit down, remove the boots, and walk sock-footed back to his own shoes; that the injury therefore resulted after the plaintiff had been twice warned and after the circumstances offered a final opportunity to choose a course which would have avoided the injury. We think plaintiff's testimony does show that he knew (at least he said he did) the bearings were loose, but the expression concerning a *rough* bearing (which would cause locking) would well be interpreted to apply to his *present* opinion of the actual cause of the locking, not what he knew at the time of the occurrence.

█ The rule is that negligence is always a question for the jury, unless from all the evidence, and the most favorable inferences that can be drawn therefrom, the only reasonable conclusion which can be drawn is that plaintiff was guilty of negligence and that such negligence was part of the proximate cause of the injury.[1] Unless no recovery can be had "on any view which may be taken of the facts which the evidence tends to establish," and if fair-minded men might reasonably be of different opinions, the question of negligence is for the jury and not the court.[2] It is true that where a litigant's own testimony establishes contributory negligence as a matter of law the issue is for the court,[3] but such testimony is still entitled to any and all reasonable inferences which can be drawn in favor of the verdict.[4]

█ Plaintiff, being a voluntary participant in (what many people consider to be) a sport, assumed the ordinary risks inherent in such activity, whether from accident, mischance, or inadvertence, but not such risks as are associated with negligence of the proprietor.[5] Although the proprietors of the rink were not insurers of the safety of their patrons, they had the duty to use due care to see that their patrons were furnished skates which were reasonably fit and safe for the purposes in which they were to be used; and the plaintiff, being both invitee and bailee for hire, had the right to rely upon the discharge of such duty, and the implied assurance that went with it, until he knew, or by the exercise of the care of a reasonably prudent man should have known, that the skates were not so fit.[6] As applied to an invitee, and others with unequal opportunity for knowledge, the courts have said that he is not required to make a critical inspection in advance and he has the right to rely upon the

1. Pender v. Foeste, Mo., 329 S.W.2d 656, 659; Kickham v. Carter, Mo., 314 S.W. 2d 902, 908; Palmer v. Lasswell, Mo. App., 267 S.W.2d 492, 495; Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 19.

2. Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167, 172; Trautloff v. Dannen Mills, Mo.App., 316 S.W.2d 866, 870; Stout v. St. Louis County Transit Co., Mo.App., 285 S.W.2d 1, 6; Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W.2d 921, 926.

3. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 580; Adkins v. Boss, Mo., 290 S.W.2d 139, 140.

4. Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, 828; Frese v. Wells, Mo., 40 S.W.2d 652, 653; Barken v. S. S. Kresge Co., Mo.App., 117 S.W.2d 674, 678; see Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, 495.

5. Schamel v. St. Louis Arena Corporation, Mo.App., 324 S.W.2d 375; Reay v. Reorganization Inv. Co., Mo.App., 224 S.W. 2d 580; McCormick v. Lowe & Campbell Athletic Goods Co., 235 Mo.App. 612, 144 S.W.2d 866; Page v. Unterreiner, Mo.App., 106 S.W.2d 528; Thompson v. Sunset Country Club, Mo.App., 227 S.W. 2d 523.

6. Spelky v. Kissel-Skiles Co., Mo.App., 54 S.W.2d 761; Standard Oil Co. of Indiana v. Leaverton, 239 Mo.App. 284, 192 S.W.2d 681; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844; Edling v. Kansas City Baseball & Exhibition Co., 181 Mo.App. 327, 168 S.W. 908, 910; Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S.W.2d 476, 479; Nephler v. Woodward, 200 Mo. 179, 98 S.W. 488.

assumption that due care has been taken for his safety "unless the danger is so obvious and glaring that a reasonably prudent person would not have acted as he did." [7] We think the same rule should apply to a bailee of an appliance for hire under the circumstances shown to exist in this case.[8] When plaintiff went to defendant and complained about his skates and the defendant adjusted or "doctored" them and told him to try them again, plaintiff had a right to rely upon that as some assurance of reasonable safety in so doing, until and unless what plaintiff knew, and what he saw and observed, was sufficient to warn him, as a reasonably prudent man, that, despite such implied assurance, one of the skates was liable to lock again. Contributory negligence is to be judged in the light of all the circumstances, and "ordinary care" and "due care" are relative terms, depending upon the circumstances at the time.[9] The very act of venturing upon the floor of a place devoted to this kind of fun, frolic, and exercise involves some disregard of risk. The whole atmosphere of such an establishment is more carefree than that which might be found at some other more sedate times and places. The mind of the patron is not fixed especially on safety and, at least to some extent, he depends upon the proprietor who "rents" him skates to furnish him reasonably safe ones. Hence he is not as much on guard as he might be under other conditions. We do not regard the fact that plaintiff was an "off and on" mechanic as imparting such superior knowledge under the circumstances here related

as to destroy his right to rely upon the implied assurance. There are mechanics, and then there are mechanics. Plaintiff was not then engaged in the practice of his off and on profession. It is *the appreciation* of, or the *opportunity to appreciate,* the peril of an instrumentality or condition, rather than a knowledge of the physical characteristics, that bars plaintiff from recovery for negligence.[10]

Although there are a number of roller skating cases in this country (see annotation 11 N.C.C.A. 3rd, 376; and annotation 98 A.L.R. 557, 560, subd. III, and previous annos. there referred to), there are few which involve the contributory negligence of the skater in the use of skating equipment.

In Frye v. Omaha & C. B. St. R. Co., 106 Neb. 333, 183 N.W. 567, 22 A.L.R. 607, a skater who had been given and was using a too-long toe strap, the end of which caught under the skate, was held guilty of more than "slight negligence" under a statute peculiar to Nebraska.

In Ducas v. Prince, 336 Mass. 555, 146 N.E.2d 677; 16 A.L.R.2d 912, a girl twelve years old was held not contributorily negligent for skating with frayed, previously broken and reknotted laces which again broke.

However, neither of these cases is comparable, because in both such cases the defect which caused the fall was plainly visible and the skater had as much opportunity for knowledge as did the proprietor.

7. Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S.W.2d 476; Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W. 2d 1035, 1040; Howard v. S. C. Sacks, Inc., Mo.App., 76 S.W.2d 460, 465; Brandt v. Thompson, Mo., 252 S.W.2d 339, 341; see Hathaway v. Evans, Mo. App., 235 S.W.2d 407.

8. See 38 Am.Jur., Negligence, § 192, p. 872; Fletcher v. Kemp, Mo., 327 S.W.2d 178, 184; Hahn v. Flat River Ice & Cold Storage Company, Mo., 285 S.W.2d 539; Parton v. Phillips Petroleum Co., 231 Mo.App. 585, 107 S.W.2d 167, 168.

9. Philippi v. New York, C. & St. L. R. Co., Mo.App., 136 S.W.2d 339; Tarantola v. Johnny Hemphill, Inc., Mo.App., 324 S.W.2d 379, 382; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W. 2d 295, 299; Lottes v. Pessina, Mo. App., 174 S.W.2d 893, 898; 65 C.J.S. Negligence § 118b, p. 714, et seq.

10. Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, 851; Westborough Country Club v. Palmer, 8 Cir., 204 F.2d 143, 149.

Although individual members of this court or other persons whom we regard as reasonable might be of the opinion that the plaintiff, in his zeal to prove the skates were no good, swore himself out of court on contributory negligence because of his professed knowledge of the poor condition of the skates, we cannot say that all reasonable men would necessarily concur in that conclusion, and hence the question of contributory negligence on that point was for the jury.

As to the failure of plaintiff to sit down on the floor, take off his boots, and walk sock-footed back across the floor to the desk, we are of the opinion that (at least it was a jury question whether) this sitting down in the middle of the rink in the midst of a moving hurly-burly of skaters might have been more dangerous than attempting to make it off the rink floor standing up. If some overly energetic and underly watchful skater or skaters did not pile into or over him as an obstruction on the floor, there still remained some possibility of having his bare feet and corns, if he had any, assaulted by the moving skates of others. We think that his conduct in respect to this was plainly for the jury.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.